## THE CITY OF JACKSONVILLE
### v.
### ELLIS M. ALLEN.

*Municipal Corporations — Extent of Powers — Officers — Policemen— Tenure—Wrongful Discharge—Remedies—Other Employment—Burden of Proof—Charter and Ordinances of Jacksonville—Instructions.*

1. A municipal corporation can exercise such powers only as are expressly granted or fairly implied in, or incident to those expressly granted, or essential to the declared objects and purposes of the corporation.

2. Where the charter of a municipal corporation establishes the terms of its officers, such tenure can not be changed by ordinance.

3. The word " officers," as used in the charter of the City of Jacksonville. includes policemen.

4. The City Council of Jacksonville can not discharge a regular police-man without giving him an opportunity to be heard in his own defense.

5. Where an officer is entitled to a hearing before he can be lawfully discharged, the proceeding must be had by and before the authorized body duly assembled, and not by and before a committee of such body.

6. In an action to recover damages resulting from a wrongful discharge from the defendant's service, the burden of proof is on the defendant to show that the plaintiff has been actually engaged in other profitable employ-ment, or that he might have been so engaged.

7. Where a servant has been wrongfully discharged, it *seems* that in this State he should declare for the damages sustained in consequence of the breach of contract, and not for his wages as such.

[Opinion filed February 17, 1887.]

APPEAL from the Circuit Court of Morgan County; the Hon. CYRUS EPLER, Judge, presiding.

Messrs. RICHARD YATES and MORRISON´ & WHITLOCK, for appellant.

Messrs. SPRINGER & DUMMER and WILLIAM BROWN, for appellee.

WALL, J. This was an action of assumpsit by appellee against appellant, to recover an amount alleged to be due for salary as policeman.

The judgment was for plaintiff below for $390, from which defendant prosecuted an appeal. The first objection urged in the brief of appellant is that the declaration was insufficient, and that the demurrer to the pleas should have been carried back and sustained to the declaration. The plaintiff alleged that he was, on the 16th of April, 1885, appointed policeman for one year at a salary of $50 per month; that he was not permitted to discharge the duties of his office after the 18th of August, and this without his fault, averring that he was at all times able and willing to perform his duty and was pre-vented from so doing by the defendant.

The court overruled a demurrer to the first count of the declaration as finally amended. The defendant then filed six pleas. A demurrer was filed and sustained as to all except the first of these.

The defendant then withdrew the first plea and took leave to amend the third, fourth and fifth. The plaintiff replied to these pleas as amended, and upon the issue thus presented the case was tried. It may be regarded as a somewhat unsettled question, whether a servant who has been wrongfully discharged may recover *his wages as such* for the remainder of the term on the allegation that he was ready to perform the service and that, therefore, he has performed it, *constructively;* or whether he should declare for the damages sustained in consequence of the breach of the contract. In England, and generally in the United States, the current of authority supports the latter view, which seems to be the more logical when the respective rights of both parties are taken into account. Such appears to be the doctrine in this State also. We do not propose to discuss the subject and will merely refer to some of the cases where it has been considered. Cutler v. Powell, 2 Smith's Lead. Cas. *20 and *21; Trustees v. Shaeffer, 63 Ill. 243; Jones v. Dunton, 7 Ill. App. 580.

We are precluded from passing upon the point suggested, because it does not arise under any of the errors assigned upon the record, and must consider the case upon the issue as made by the pleadings. That issue, strictly speaking, was whether the appellee was discharged without a hearing before the City Council, and this leads to a statement of the real matter in controversy, which is whether the City Council has power to discharge a regular policeman without giving him an opportunity to be heard in his defense. The question must depend upon the provisions of the charter. A municipal corporation is an agency of the State, created for the purpose of regulating local affairs within the incorporated district. Of every such corporation the charter or statute by which it is created is its organic act. It can exercise such powers only as are granted *expressly* or *fairly implied* in, or incident to, those expressly granted, or essential to the declared objects and purposes of the corporation.

Any reasonable doubt concerning the existence of the power is solved by the courts against the corporation, and the power denied. All acts in excess of the granted powers are void. Dillon, Municipal Corp., Vol. 1, Sec. 55.

The provisions of the charter of the City of Jacksonville, so far as they are important in this connection, are as follows:

Art. 2, Sec. 1. "The municipal government of the city shall consist of a City Council to be composed of the Mayor and one Alderman from each ward. The other officers of the corporation shall be as follows: A City Clerk, a City Marshal, a City Treasurer, a City Attorney, a City Collector and Assessor, a City Street Commissioner and a City Surveyor, who, in addition to the duties prescribed by this act, shall perform such duties as may be prescribed by ordinance."

Art. 2, Sec. 2. "All officers to be elected or appointed under this act, except as are otherwise provided, shall hold their offices one year and until the election or appointment and qualification of their successors respectively." * * *

Art. 2, Sec. 5. "Any officer elected or appointed to any office may be removed from such office by a vote of two-thirds of all Aldermen authorized by law to be elected, but no officer shall be removed except for good cause, nor unless furnished with the charge against him and heard in his defense."

Art. 4, Sec. 17. "The City Council shall have the power to appoint a City Engineer, or Surveyor, and a City Treasurer and the necessary number of policemen and regulate the duties and fix the pay of each."

These extracts are from the special charter passed in 1867. P. L. 1867, Vol. 1, 336. In 1869 the following amendment was passed (P. L. 1869, Vol. 2, page 2):

Sec. 5. . "That hereafter the City Street Commissioner and City Surveyor, provided for in the first section of article two of the act to which this is an amendment, shall be appointed by the City Council, and said officers shall be subject to the orders and be under the control of said Council and said Street Commissioner and Surveyor and all other officers and agen's now authorized, or that may be hereafter authorized to be appointed by said City Council may be removed from office and their places filled by other persons by a vote of the majority of said Council, as provided in the fifth section of the second article of the act hereby amended."

It is contended on the part of the city that policemen are

not within the scope of Art. 2, Sec. 5, or of the amendment. The city, therefore, adopted an ordinance in 1887, which provided, among other things, that policemen should continue in office during the pleasure of the Council, and in 1884 it adopted an ordinance which declared in Sec. 1, that all appointees of the Council to the offices of city treasurer, attorney, street commissioner, engineer, sexton, health warden, surveyor, policeman and such other offices as might thereafter be created, should be considered as employed by the month, and each of said officers should accept and hold his appointment subject to the right of the City Council by a majority of all the members elected to discharge him from the service of the city at the end of every month. If, at the end of any month, no order was made discharging him he was to be considered as retained for another month, and in like manner and subject to such conditions should hold during the municipal year. *Provided* the ordinance should not apply to special policemen, nor prevent the discharge of any officer for cause under Sec. 5, Art. 2 of the charter and Sec. 5 of the amendatory act.

Sec. 2 declared that every commission should contain a provision to the effect that the same was given and accepted subject to the foregoing section. The commission issued to the appellee contained such a provision.

The city had no power to pass these ordinances so far as they operate as a limitation upon the terms of the officers therein named.

Sec. 2 of Art. 2 declares that all officers elected or appointed under the act, except as otherwise provided, shall hold their offices one year, and it was not competent for the City Council thus to affect the terms of these officers.

There can be no doubt that the term "officers" will include policemen. Such is a common meaning. Indeed the ordinance last referred to seems to so regard them, as does the other, by implication, at least.

The term of office being by the organic law for one year, the Council could not make it more or less, and the appointment, when made, would be for the period prescribed by the charter. The clause in the commission, based on the invalid ordinance, may be treated as surplusage and disregarded.

Such was the view taken by the Supreme Court of Michigan in the case of Stadler v. City of Detroit, 13 Mich. 346.

As to the facts of the case there is but little controversy. It appears that a charge of incompetency and misconduct had been preferred against the appellee. This was referred to the publ.c committee. The appellee was notified by the city attorney in writing, that on the 18th of August, 1885, at 7:30 P. M., there would be a special meeting of the Council when the committee would present a report recommending his discharge from the police force on account of the use of intoxicating liquors, at which time he might, if he saw fit, appear and be heard in defense.

He appeared at the time set. The report was presented and by his attorney he asked for a hearing and an investigation but the Council denied the request and having adopted the report of the committee, discharged him from the police force of the city. It is now contended that within the purview of Sec. 5, Art. 2, of the charter and the amendment, he „was not entitled to a hearing before the Council, but only before the committee, and that the court should have permitted proof, which was offered, that he had an opportunity of being heard before the committee.

Dillon on Municipal Corporations lays down the rule that the proceedings "must be had by and before the authorized body duly assembled." °

The "authorized body" in this case is the Council, not the committee. The committee may prefer a charge, but the power to act upon it is in the Council. It can not be, and was not in this case, delegated to the committee. It would be unreasonable to suppose that a hearing might be had before a body which could only make a charge.

Obviously the hearing intended was by and before the Council, which alone could remove. At such hearing he was entitled to produce his witnesses and by himself, or attorney, to cross-examine those of the prosecution. Anything short of this would not deserve the name of a hearing. See Dillon, Mun. Corp., Secs. 191, 192, 193.

That inconvenience may arise in the administration of this provision is not unlikely, but when the legislative intent is

clear this can make no difference. If it were uncertain as to
the true construction, such an argument might have great
weight in arriving at the design of the law, but it has no place
here in the view we have taken.

It is objected that the court instructed the jury that the
measure of damages was the amount of the salary for the
unexpired term which the plaintiff was not allowed to serve.

There was no evidence as to whether plaintiff earned or
might have earned anything in other employments during
that period, save his own statement that he had endeavored to
get other employment but had been unsuccessful. This was
uncontradicted, and upon the facts the instruction was a cor-
rect statement of the plaintiff's rights. It is insisted by
appellee that the ordinary rule of compensation merely is not
applicable in a case where an officer seeks to recover his salary
after having been prevented from performing the duties of
the office, and that he is absolutely entitled to the salary.

We do not feel called upon to determine whether such a
rule should be applied in a case like this, as the ruling of the
court may be sustained without it. In the case of Fuller v.
Little, 61 Ill. 1, where private persons only were concerned,
it was said: "But the rule in actions of this character is that
the burden of proof is on the defendant to show the plaintiff
has been actually engaged in other profitable employment, or
that such employment had been offered him and rejected. 2
Greenleaf, Ev., 261 a, and cases cited in note. * * * It
can only be said, on this point, the defendant wholly failed to
make out his defense and he can not call upon us to reverse a
judgment on the ground that the instruction was inaccurate
in confining deductions to net earnings when there was no evi-
dence upon which the jury could properly have made a deduc-
tion for earnings of any sort. Sedgwick on Measure of Dam-
ages, 2d Ed. 221; Field on Damages, Secs. 133, 340.

With regard to the instructions given and refused, we deem
it necessary to say, only, that the case appears to have been
properly put to the jury, according to the views we entertain
and have expressed.

No substantial error is presented, and the judgment will
therefore, be affirmed.            *Judgment affirmed.*