JOHN F. JAGGER, *Plaintiff*, V. CHARLES W. GREEN, as Mayor, etc., et al., *Defendants*.

No. 18,754.

SYLLABUS BY THE COURT.

1. CITIES—*Field Man in Health Department—Not a City Officer.* A field man of the department of health of the city of Kansas City is not an officer of the city but merely the holder of a subordinate position, and consequently his employment does not terminate with the term of office of the board of commissioners appointing him under section 88 of chapter 114 of the Laws of 1907.

2. ——— *Health Department—Field Man—Under Civil Service Regulations.* The civil service act (Laws 1909, ch. 74, § 4), governs appointments to the position of field man in the department of health of the city of Kansas City, and that act withdraws civil service appointees from the operation of section 90 of chapter 114 of the Laws of 1907, which permits the board of commissioners of the city to remove the incumbent of any office or employment, at discretion, with or without cause.

3. ——— *Same.* Since the position of field man in the health department is not an office, section 2 of article 15 of the constitution, which forbids the creation of any office the term of which is longer than four years, does not govern its tenure.

Original proceeding in mandamus. Opinion filed June 7, 1913. Motion to quash alternative writ overruled.

*James F. Getty,* of Kansas City, for the plaintiff.
*R. J. Higgins,* city attorney, for the defendants.

The opinion of the court was delivered by

BURCH, J.: The plaintiff asks for a writ of mandamus to compel the defendants, who constitute the board of commissioners of the city of Kansas City, to recognize him as a "field man" of the department of health, to which position he was appointed under civil service rules and from which he was removed by the defendants without cause. The defendants move to quash the alternative writ, on the ground that it does not state facts sufficient to constitute a cause of action. The decision turns primarily upon the force to be given to the civil service law applying to cities of the first class adopting a commission form of government. Since this law, so far as it relates to the city of Kansas City, will be superseded on June 1, 1913, by a new one (Laws 1913, ch. 88), and since the action involves the tenure of a particular position created by an ordinance of the city, the opinion will be extended only so far as may be necessary to indicate the court's views.

The law providing for a commission form of government in cities of the first class (Laws 1907, ch. 114, Gen. Stat. 1909, § 1213 *et seq.*) authorized the board of commissioners to appoint a city attorney, a city clerk, a city treasurer, a city auditor, a city engineer, a superintendent of streets, a superintendent of waterworks, a secretary of waterworks, a fire marshal, a chief of police, a city physician, a judge of the police court, a superintendent of public parks, and a city assessor. The board was further authorized to appoint "such assistants and other officers and servants as they may deem necessary for the best interests of the city; but no such officer shall be appointed until his term and salary shall have been fixed by ordinance." (§ 88.)

This law provided that the terms of all appointive

Jagger v. Green.

officers should expire with the term of office of the board appointing them, but that the board might, at its discretion, by a majority vote of all the members, remove, with or without cause, the incumbent of any city office or employment whatever, except city attorney, city clerk, city treasurer, and city auditor, for whose removal special provision was made. (Laws 1907, ch. 114, §§ 88, 90, Gen. Stat. 1909, §§ 1304, 1306.)

The commission form of government act was amended and supplemented by chapter 74 of the Laws of 1909. Certain sections not now material were repealed, and the amendatory act concluded with the useless declaration that all acts and parts of acts in conflict with it were repealed. Section 4 of the act of 1909 (Gen. Stat. 1909, § 1238) was in effect a complete civil service law for cities to which it applied. It created a board of civil service commissioners, whose duties were to endeavor to secure and maintain an honest and efficient force of city employees free from partisan influence or control. It contained the following provisions:

"Said commission shall, on the first Monday of April and October of each year, or oftener if it shall be deemed necessary, under such rules and regulations as may be prescribed by the commissioners, hold examinations for the purpose of determining the qualifications of applicants for positions, which examination shall be practical and shall fairly test the fitness of the persons examined to discharge the duties of the position to which they seek to be appointed. Said commission shall, as soon as possible after such examination, certify to the city commission double the number of persons necessary to fill vacancies who, according to its records, have the highest standing for the position they seek to fill as a result of such examination, and all vacancies which occur that come under the civil service, prior to the date of the next regular examination, shall be filled from said list so certified. *Provided, however,* that should the list for any cause be reduced to less

than three for any division, then the city commissioners or the head of the proper department may temporarily fill the vacancy, but not to exceed thirty days.

"All persons subject to such civil-service examinations shall be subject to removal from office or employment by the city commission for misconduct or failure to perform their duties under such rules and regulations as it may adopt, and the chief of police, chief of the fire department, or any superintendent or foreman in charge of municipal work, may peremptorily suspend or discharge any subordinate then under his direction for neglect of duty or disobedience of his orders, but shall within twenty-four hours thereafter report such suspension or discharge and the reason therefor to the superintendent of his department, who shall thereupon affirm or revoke such discharge or suspension, according to the facts. Such employee (or officer discharging or suspending him) may, within five days of such ruling, appeal therefrom to the commission, which shall fully hear and determine the matter.

"The provisions of this section shall apply to all appointive officers and employees of said city, except city attorney, the members of the fire department where they have already adopted the civil-service plan, city clerk, city treasurer, city auditor, city engineer, superintendent of streets, superintendent of waterworks, secretary of waterworks, chief of police, city physician, judge of police court, superintendent of public parks, city assessor, commissioners of any kind (laborers whose occupation requires no special skill or fitness), election officials and mayor's secretary and assistant attorney, where such officers are appointed." (Subdivisions b, c, f.)

In 1910, pursuant to power duly conferred, the city created by ordinance an executive department, to be known as the health department, which was given the right to make regulations to secure the general health of the city and was charged with the performance of certain specified duties in the interest of the public health. The ordinance provided for the appointment of a health commissioner, who was given general supervision over the department. The qualifications for ap-

pointment were that he should be a reputable physician, well known for his skill and efficiency in hygienic matters and in matters of analysis and chemistry, and he was given an annual salary as compensation for his services.    Many of his duties were specifically prescribed.    Besides these, he was given direct charge of and made responsible for all other work of the department, and was authorized to formulate rules and regulations for its government and conduct, in the interest of the public health.    Section 3 of the ordinance provided as follows:

"SEC. 3. There shall be appointed, in addition to the health commissioner, not more than three field men and one clerk, at least one of said field men to be a veterinarian.    All of said officers to be appointed in the manner provided by law, and to receive as their compensation the following sums, respectively: the veterinarian, eighty dollars per month, one field man, seventy dollars per month, and the second field man, who shall also be a laboratory assistant, eighty dollars per month, and the clerk, fifty dollars per month, payable monthly."

The principal work assigned to the field men was the making of inspections and the making of daily reports to the health commissioner.    Besides this, they were to collect samples of milk and food products for examination as often as the department deemed necessary, execute quarantine regulations, do fumigating, and perform whatever other services the health commissioner might require of them in the interest of the public health.    They were further empowered to condemn and confiscate unwholesome food stuffs.

An ordinance of the city provided that civil service appointments should, after a probationary period of three months, be deemed to be permanent, and that such appointees should not be removed except in the manner provided by law.

The plaintiff was appointed a field man under civil service regulations in March, 1912.    On April 10, 1913,

he was removed. The term of office of the board appointing him had expired.

The plaintiff was not one of the officers specifically named in the act of 1907 whom the commissioners were authorized to appoint. He was appointed by virtue of the power given to appoint "such assistants and other officers and servants" as the public interest may require. If he was not an appointive officer but was merely a subordinate position holder, his term did not expire with the term of office of the board appointing him.

The health commissioner is the only person connected with the department of public health who holds a position analogous to an office. The field men are merely subordinate employees who work under his direction and supervision and for whose conduct he is responsible. The power to condemn and confiscate unwholesome food stuffs is exercisable only under the commissioner's supervision and under such rules and regulations as he may formulate, and the field men possess no other authority which rises to the dignity of corporate power officially vested. It is not important that the ordinance uses the term "officers" in one place in speaking of the appointees in the health department. Considering the nature of the service, its relative importance, its essentially subservient character, and the placing of responsibility for results upon a superior who is given full power of direction, supervision and control, it must be held that the plaintiff was not a city officer within the meaning of the statute just referred to.

Since the plaintiff is not one of the appointive officers or employees excepted from the operation of the civil service act, he is entitled to claim the benefit of its provisions.

The purpose of civil service laws is well understood. They are designed to break up the spoils system of fill-

ing public offices and employments, and to promote efficiency in the administration of public business. To accomplish this it is not enough that provision be made for testing qualifications and for impartial selections. There must be permanence of tenure so long as good behavior and efficient discharge of duty continue. The civil service act in question has dealt with the subject of removals. The whole subject of appointments is covered by subdivision b, quoted above. Terms of employment are not mentioned, and the act applies only to those employments which ought not to be confined to fixed terms. The last clause of the subdivision allows vacancies to be filled temporarily under certain contingencies. There is no limit to the time for which other appointments are made, and they would be permanent except for the provision relating to removals, which immediately follows in subdivision c. The two subdivisions contain exclusive requirements, the one relating to appointments and the other relating to removals, and the result is that civil service appointees are withdrawn from the operation of the act of 1907, which permits the board of commissioners of the city to make removals at discretion, with or without cause.

If it be true, as the defendants argue, that it is compatible with sound civil service theory to allow them to make removals at will and hold them responsible for the arbitrary exercise of the power, the legislature did not adopt that view in framing the act of 1909. The law of 1913 provides that "all persons subject to civil service examination may be removed from office or employment only upon charges preferred," etc. (Laws 1913, ch. 88, § 11.) It is not believed that the legislature has changed its policy or that the word "only" was inserted to mark an irreconcilable difference between the old law and the new, but that the purpose was to silence quibble by greater clarity of expression.

Since the position of field man of the health depart-

ment is not an office, section 2 of article 15 of the constitution, which forbids the creation of any office the term of which is longer than four years, does not apply.

The case is finally submitted upon the alternative writ and the motion to quash. The motion to quash is overruled and a peremptory writ will be allowed, unless within five days the defendants answer that they have reinstated the plaintiff to the possession and enjoyment of the position of field man of the health department of the city.