No. 19,221.

B. D. JONES, *Plaintiff*, v. J. D. BOTKIN, as Warden of the Kansas State Penitentiary, *Defendant.*

SYLLABUS BY THE COURT.

1. MANDAMUS — *Cell-house Man in Penitentiary — Within the Protection of the Civil Service Act.* An appointee to the position of cell-house man in the state penitentiary is not an officer within the meaning of section 2 of article 15 of the constitution, and is within the protection of the civil service act (Laws 1905, ch. 487) regulating the appointment and removal of subordinate officers and employees in the charitable and penal institutions of the state.

2. SAME—*Hospital for Criminal Insane—Attendants are Employees of the Penitentiary.* The hospital for the criminal insane is maintained in connection with the state penitentiary, and the attendants and employees of the hospital are under the control of the board of directors and warden of the state penitentiary and are, in effect, employees of that institution.

3. SAME—*Alternative Writ—States Cause of Action.* The averments of the alternative writ examined and held to state a cause of action in mandamus to compel the warden of the state penitentiary to restore the plaintiff to the position formerly held by him as cell-house man in the state penitentiary.

Jones v. Botkin.

Original proceeding in mandamus. Opinion filed April 11, 1914. Motion to quash alternative writ overruled.

*Fred S. Jackson,* of Topeka, for the plaintiff.
*J. J. Schenck,* of Topeka, for the defendant.

The opinion of the court was delivered by

JOHNSTON, C. J.: This is a proceeding to compel J. D. Botkin, the warden of the state penitentiary, to restore B. D. Jones to the position formerly held by him as cell-house man of the institution, and from which he had been removed by the warden. In his pleading Jones alleged that he had been an attendant at the penitentiary for over nine years, and that for some time prior to October 31, 1913, he had been in charge of the insane ward of the institution, and had nursed and taken care of prisoners who were insane. It was also alleged that he had been trained for that work, and had faithfully and efficiently performed the duties of the place, and had received as compensation for his services the sum of $800 per year. It was further averred that, although serving under and protected by the civil service law (Laws 1905, ch. 487, Gen. Stat. 1909, §§ 7970-7972), which prohibits the removal of subordinate officers and employees from the state penitentiary and other institutions of the state because of political affiliations or actions and never except for cause, the warden, in willful disregard of the law and of his duties under the law, discharged Jones from his position as cell-house man and refused to permit him to perform the duties or to receive his salary as such employee. It is further expressly alleged that Jones was removed by the warden for political reasons, and to enable that officer to appoint a political friend to the position, and that there was no charge of inefficiency or unfitness for the position, and no notice

was given Jones that he was to be removed because of any such charge.

On a motion to quash the alternative writ it is contended that as Jones is alleged to be a cell-house man working in the insane ward, and nursing and caring for prisoners under treatment for the disease of insanity, he was not under the jurisdiction or control of the warden, nor an attendant or employee of the state penitentiary. It is argued that he is an officer or attendant of the state asylum for the dangerous insane, for which provision was made in chapter 299 of the Laws of 1911. That act, in effect, provides for enlarging the scope of the insane ward of the penitentiary, for which provision had theretofore been made. In addition to convicts who have become insane, the act provides for holding and caring for such insane persons, idiots, imbeciles and epileptics as may be committed thereto by the courts of criminal jurisdiction. According to the act, the asylum is to be erected, equipped and maintained by the board of directors of the penitentiary, and is to be supervised and managed by the board in connection with that institution. The appropriation to maintain the hospital for the criminal insane is to be expended by the prison authorities. The warden is the chief executive officer of the penitentiary, who superintends every department of the institution, including the hospital for the criminal insane. The averments of the alternative writ show that he is in fact exercising control of the attendants in that ward or hospital, and he did remove Jones from serving as cell-house man and nurse in that hospital.

There is some contention that Jones voluntarily surrendered the office, and that this may be inferred from letters written by the warden which are attached to the alternative writ. In the first letter the warden said:

"In the reorganization of the prison force, which has always been the custom under conditions that now exist in Kansas, it becomes necessary for me to request

your resignation, to take effect the last day of the present month.

"I am sure your sense of fairness will prompt you to do this cheerfully. You will leave the service with my hearty good will and best wishes."

In the second letter, written five days later and addressed "To Whom It May Concern," the warden said:

"In the case of Mr. B. D. Jones, who will retire from the penitentiary service on October 31, it is proper for me to say that he has been an excellent officer for a number of years.

"He is a gentleman of first-class habits and character and is not wanting in valuable accomplishments. In fact, I wish to say that as an officer, he has been loyal to the authorities of the institution, efficient in every position in which he has served, and I do not hesitate to say that his place will be difficult to fill.

"I have authorized Mr. Jones to refer any interested party to me for further endorsement."

The first letter was in fact a demand for a resignation and the equivalent of an order of removal. The second was a friendly endorsement of Jones and given with the evident purpose of aiding him in securing a position elsewhere. If there is any doubt as to the inference to be drawn from the letters of the warden or as to the reason why Jones is no longer in the service or upon the pay roll of the institution it is set at rest by the averments in the writ, which are to the effect that Jones was removed arbitrarily, unlawfully and without cause by the warden and who since that time has refused to allow him to serve in the institution in any capacity. The import of all the averments of the writ, when considered together, is that Jones was removed for political reasons contrary to the civil service laws, which, it has been said, "are designed to break up the spoils system of filling public offices and employments, and to promote efficiency in the administration of public business." (*Jagger v. Green,* 90 Kan. 153, 158, 133 Pac. 174.)

It is finally contended that a cell-house man is an officer within the meaning of section 2 of article 15 of the state constitution and under that provision he is only holding his place at the pleasure of the appointing power and may be removed at the will of the warden. The section reads:

"The tenure of any office not herein provided for may be declared by law; when not so declared such office shall be held during the pleasure of the authority making the appointment, but the legislature shall not create any office the tenure of which shall be longer than four years."

It is argued that no tenure is prescribed for the office held by Jones, and accordingly, by the express terms of the constitution, he holds only during the pleasure of the warden and subject to removal by him without regard to the civil service act. Whether this limitation applies to officers who hold during the pleasure of the appointing power and whose tenure may terminate on the occurrence of some uncertain event is not open for decision in this proceeding. The position of cell-house man is not an office within the meaning of that section of the constitution. He is an ordinary attendant such as farmer, towerman, doorkeeper or other ordinary employee who performs services under direction of the governing officers of the institution. In one provision of the statute warden, clerk, physician, chaplain, deputy warden and such keepers as the warden and directors may deem necessary are spoken of as officers. (Gen. Stat. 1909, § 8560.) An attendant, such as a cell-house man, does not come within this classification, and in any event it is clear that he does not come within the officers referred to in the constitutional provision. That is indicated by the character of the service which he performs, the manner of appointment and the fact that an official bond is not required of him. (*Jagger v. Green,* supra.) The statute provides that only the warden, deputy warden and clerk of the institution

The State, *ex rel.*, v. City of Pratt.

shall give official bonds.  ·(Gen. Stat. 1909, § 8578.) The purpose of the constitutional limitation makes it clear that the makers of the constitution were not concerned about subordinate officers and employees that might be called to public service of the kind to be performed by cell-house men.  The legislature was given power to create offices not named in the constitution and to fix the tenures of the same, and the object was to prevent an abuse of that power by unduly extending the tenure of such officers as exercised the powers of sovereignty and shaped the policies of government and in that way might encroach on other departments of the government.

The position held by Jones is within the protection of the civil service law and therefore the motion to quash the alternative writ must be overruled.