Haney v. Cofran.

No. 19,063.

O. F. HANEY, *Appellant*, v. R. L. COFRAN, as Mayor, etc., and J. W. F. HUGHES, as Chief of Police, etc., *Appellees*.

SYLLABUS BY THE COURT.

1. CITY POLICEMAN—*An Officer of the City.* A policeman holds an office within the meaning of section 2 of article 15 of the state constitution.

2. SAME—*Not Within Provision of Civil-service Laws.* The civil-service provisions of section 1238 of the General Statutes of 1909, relating to commission government in cities of the first class, must be restricted to the employment of subordinates and employees, and can not apply to officers within the contemplation of section 2 of article 15 of the state constitution.

3. SAME—*Tenure of Office.* Under the constitution (Art. 15, § 2) a policeman holds his office during the pleasure of the authority making the appointment.

4. SAME—*Appointment During Good Behavior—Unconstitutional.* An appointment of a policeman during good behavior under civil-service regulations violates the constitutional provision that the legislature shall not create any office the tenure of which shall be longer than four years.

Appeal from Shawnee district court, division No. 2; GEORGE H. WHITCOMB, judge. Opinion filed March 6, 1915. Affirmed.

*T. D. Humphreys, Arthur J. Bolinger,* both of Topeka, and *A. E. Crane,* of Atchison, for the appellant.

*W. C. Ralston,* and *J. J. Schenck,* both of Topeka, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: The appellant, O. F. Haney, was a policeman of the city of Topeka until the change of administration following the city election in April, 1912, when he was summarily discharged by the mayor and chief of police. Invoking the provisions of the

civil-service law relating to cities of the first class, Haney appealed to the civil-service commissioners, who, upon hearing, revoked his discharge and ordered him restored to his position. (Gen. Stat. 1909, § 1238.) The appellees ignored the order of the civil-service commissioners, and appellant applied for and obtained from the district court an alternative writ of mandamus directing his reinstatement. The mayor and chief of police filed a motion to quash the alternative writ, which motion was sustained.

So much of the civil-service act as we need to consider reads:

"The provisions of this section shall apply to all appointive officers and employes of said city, except city attorney, the members of the fire department where they have already adopted the civil-service plan, city clerk, city treasurer, city auditor, city engineer, superintendent of streets, superintendent of waterworks, secretary of waterworks, chief of police, city physician, judge of police court, superintendent of public parks, city assessor, commissioners of any kind (laborers whose occupation requires no special skill or fitness), election officials and mayor's secretary and assistant attorney, where such officers are appointed. All officers and employes in any such city shall be elected or appointed with reference to their qualifications and fitness and for the good of the public service, and without reference to their political faith or party affiliations. Any violations of the provisions of this section shall be a misdemeanor and be a ground for removal from office." (Gen. Stat. 1909, § 1238, subdiv. *f*.)

The appellees contend that a policeman is a public officer within the meaning of section 2 of article 15 of the state constitution. That section reads:

"The tenure of any office not herein provided for may be declared by law; when not so declared such office shall be held during the pleasure of the authority making the appointment, but the legislature shall not create any office the tenure of which shall be longer than four years."

Does a policeman hold an office created by law? The legislature has not actually descended into such details, but it has created municipalities and defined their powers, and in general terms has authorized the creation of the *position* of a policeman in the cities of this state. (Gen. Stat. 1909, § 1238, subdiv. *c;* Gen. Stat. 1909, § 1304.)

In many respects a policeman is a municipal officer, but in other and important respects the legislature and the courts have raised him out of the class of a mere subordinate or employee like a field man of a local department of health (*Jagger v. Green,* 90 Kan. 153, 133 Pac. 174), or a cell-house man at the penitentiary (*Jones v. Botkin,* 92 Kan. 242, 139 Pac. 1198).

A policeman is a conservator of the peace and exercises many of the functions of sovereignty, and important duties are imposed upon him by the legislature. (See Gen. Stat. 1909, §§ 982, 2832, 2881, 2882, 2894, 3884, 4368, 5077, 5111, 5139 and 5140.)

This court has frequently recognized police officers as exercising the functions of sovereignty; and being clothed with such extensive powers they must be considered public officers. (*The State, ex rel., v. Hunter,* 38 Kan. 578, 17 Pac. 177; *Peters v. City of Lindsborg,* 40 Kan. 654, 656, 20 Pac. 490; *Topeka v. Kersch,* 70 Kan. 840, 79 Pac. 681, 80 Pac. 29; *Claflin v. Wyandotte County,* 81 Kan. 57, 105 Pac. 19; *Anderson v. Shawnee County,* 91 Kan. 362, 137 Pac. 799.)

There is no end of authority that a policeman is a public officer. (*The City of Jacksonville v. Allen,* 25 Ill. App. 54; *Brown v. Russell,* 166 Mass. 14, 43 N. E. 1005, 32 L. R. A. 253; *State, ex rel., v. Schram,* 82 Minn. 420, 85 N. W. 155; *Dempsey v. N. Y. C. & H. R. R. Co.,* 146 N. Y 290; 40 N. E. 867; *State v. Painesville,* 32 Ohio C. C. 123; Penal Code, Tex. 1895, art. 243; *Proctor v. Blackburn,* 28 Tex. Civ. App. 351, 67 S. W. 548.)

In *Peters v. City of Lindsborg,* 40 Kan. 654, 20 Pac. 490, it was said:

"The police officers of a city are not regarded as the servants or agents of the city; their duties are of a public nature; their appointment is made by the city as a convenient mode of exercising a function of government; their duties are to preserve the good order and provide for the safety of the people of the city, and in these duties they act as the public servants of the state under the law, and not as mere agents of the city." (p. 656.)

A diligent search of the authorities discloses only one case under a constitutional provision like our own which is held not to apply to a policeman of a city. That case is *Roth v. State, ex rel.,* 158 Ind. 242, 63 N. E. 460, where one section of the syllabus reads:

"The provisions of sec. 2, art. 15, of the constitution that 'the General Assembly shall not create any office, the tenure of which shall be longer than four years', does not apply to the office or position held by a policeman of a city."

The opinion of the Indiana supreme court has much to commend it; but we are impelled to a different conclusion by our own decisions distinguishing between officers and employees and the classes of public servants which may properly be placed under civil-service (*Jagger v. Green,* 90 Kan. 153, 133 Pac. 174; *Jones v. Botkin,* 92 Kan. 242, 139 Pac. 1198), and those which may not (*Wulf v. Kansas City,* 77 Kan. 358, 94 Pac. 207). Moreover, we must admit that the weight of authority supports the contention of appellees.

In *Monette v. State,* 91 Miss. 662, 44 South. 989, it was said:

"Constitution 1890, § 20, providing that no person shall be elected or appointed to office in this state for life or good behavior, but the term of all offices shall be for some specified period, applies to municipal as well as to state and county officers and a municipal ordinance purporting to authorize the appointment of policemen during good behavior is unconstitutional and void." (Syl. ¶ 1.)

In *City of Houston v. Estes,* 35 Tex. Civ. App. 99, 79 S. W. 848, it was said:

"Sections 26 and 26a of the charter of the city of Houston, placing the employes of the police, fire and health departments under civil service regulation and providing that they can only be discharged upon complaint for cause made to a board established for this purpose, appeal lying to the city council, held unconstitutional in so far as they fix the tenure at life upon good behavior. The constitutional term of two years will govern, subject to such regulation." (Syl. ¶ 1.)

*Houston v. Estes,* supra, is specially followed in *City of Houston v. Smith,* 36 Tex. Civ. App. 43, 80 S. W. 1144, and *City of Houston v. Mahoney,* 36 Tex. Civ. App. 45, 80 S. W. 1142. Earlier Texas supreme court cases: *The State v. Catlin,* 84 Tex. 48, 19 S. W. 302; *City of San Antonio v. Micklejohn,* 89 Tex. 79, 33 S. W. 735; *Kimbrough v. Barnett,* 93 Tex. 301, 55 S. W. 120.

In *Callaghan v. McGown,* (Tex. Civ. App. 1905) 90 S. W. 319, the Texas court of civil appeals slightly alters its position, and holds that the civil-service law does cover policemen, but only for the term of two years, which is the constitutional maximum term for any office which may be created by law.

The same conclusion is reached by noting particularly one clause of our own constitution in the section under consideration:

"When [the tenure of any office] not so declared such office shall be held during the pleasure of the authority making the appointment."

If a policeman's tenure of office is not fixed by the legislature, and it is not so fixed unless controlled by the civil-service law, then he holds "during the pleasure of the authority making the appointment." There is nothing doubtful about that language. It is clear, imperative and to the point. So a policeman, being a public officer with no term fixed, holds his office at the pleasure of the authority appointing him. We confess our disappointment at the result thus reached, and have

sought with care to find a different result.  If the legis-
lature had said that police officers should be under civil-
service regulations for terms of four years there would
be no difficulty.   The Texas court of civil appeals, in
*Callaghan v. McGown,* supra, have apparently thought
it is possible to read the constitutional provision into
the Texas civil-service law, thus modifying their earlier
interpretations; but it is more in harmony with our
view of the subject that the legislature should make its
own interpolations.

There is an additional difficulty under our statute in
reaching that conclusion.   The act relating to commis-
sion government of cities of the first class (Laws 1907,
ch. 114, and amendments) contains two sections which
we can not ignore:

"Art. V, sec. 27.   The board of commissioners
.  .  .  shall have power  .  .  .
"Sec. 48.   To provide for the removal of any elective
or appointive city officer for misconduct in office.
"Art. VII, sec. 90.   The board of commissioners shall
have power to remove the city attorney, city clerk, city
treasurer or city auditor for incompetency, neglect of
duty, or malfeasance in office, upon charges preferred,
after due notice in writing and opportunity to be heard
in their defense.   When such charges are sustained,
any such officer shall be removed by resolution of the
board of commissioners, passed by a vote of at least
four of the members of said board, declaring that the
charges preferred have been proven and that such
office is vacant.   But said board may in their discre-
tion, by a majority vote of all the members thereof, re-
move with or without cause the incumbent of any other
appointive city office or employment whatever, and may
by ordinance prescribe, limit or change the compensa-
tion of such officers and employes, except that the
salaries of all appointive officers shall not be increased
or diminished during the term for which they are ap-
pointed."   (Gen. Stat. 1909, §§ 1243, 1264, 1306.)

The civil-service provisions were inserted in this act
by the legislature of 1909 (Laws 1909, ch. 74, § 4, Gen.
Stat. 1909, § 1238), but they are *in pari materia* and

must be considered in harmony with the other statutes dealing with this subject. (*Wren & Clawson v. Comm'rs of Nemaha Co.*, 24 Kan. 301.)

"The general rule in the construction of a statute is that force and effect must be given to all sections of a statute, if the same can be done without destroying the effect, intent and object with which it was enacted; and all sections of the same act must be construed in harmony with each other, so that no part shall be held as superfluous." (*Wenger v. Taylor*, 39 Kan. 754, syl. ¶ 1, 18 Pac. 911.)

In the state of New York, where civil-service has reached its highest development, there is a provision in the New York constitution, adopted in 1894, giving positive sanction to civil-service laws. It reads:

"Appointments and promotions in the civil service of the state, and of all the civil divisions thereof, including cities and villages, shall be made according to merit and fitness to be ascertained, so far as practicable, by examinations, which, so far as practicable, shall be competitive; provided, however, that honorably discharged soldiers and sailors from the army and navy of the United States in the late civil war, who are citizens and residents of this state, shall be entitled to preference in appointment and promotion without regard to their standing on any list from which such appointment or promotion may be made. Laws shall be made to provide for the enforcement of this section." (Constitution of New York, art. 5, § 9.)

It needs no comment to point out the wide difference between the Kansas and New York constitutions on the question under consideration.

From this it follows that a policeman is an officer, and not within the scope of the civil-service regulations, and as his term is not fixed, he holds, in conformity with the constitution, "during the pleasure of the authority making the appointment."

The judgment is affirmed.

BURCH, J. (dissenting) : I am not convinced that an amendment to the constitution of this state is necessary before policemen can be placed under civil-service regulations. Therefore, I dissent.