No. 33,488

L. R. MILLER, *Appellant,* v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF OTTAWA, *Appellee.*

(71 P. 2d 875)

Opinion filed October 9, 1937.

*R. E. McTaggart* and *W. C. Perry,* both of Belleville, for the appellant.
*Z. C. Milliken* and *W. C. Milliken,* both of Salina, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This was an action by the county engineer of Ottawa county against the board of county commissioners of that county upon a contract to recover a balance of $50 per month for ten months, or $500, for unpaid salary agreed to have been paid to the county engineer by the board at the rate of $200 per month for one year.

The plaintiff introduced his evidence as to such contract and the amounts paid, leaving such balance, the most of such evidence being by stipulation. It was also stipulated that the reason the county board had reduced the amount was because of a subsequent act of the legislature (Laws 1933, ch. 186) reducing the salary of county engineers in such counties to $150 per month, the new law taking effect after the salary of $200 per month had been paid for two months of the year covered by the contract. The defendant board demurred to plaintiff's evidence; the trial court sustained the demurrer and rendered judgment for the defendant, from which the plaintiff appeals.

The appellant states the questions involved as being whether the county board was authorized to enter into such a contract, and if so, could the legislature by subsequent act change or modify that contract? The second question involved has reference to the federal constitutional provision (art. 1, § 10) against the passage of any law by any state impairing the obligation of contracts. There can be no argument on this question or on whether the provision may extend to and include contracts with states or other governing bodies as well as contracts between individuals, this having been settled in *State, ex rel., v. State Highway Comm.,* 139 Kan. 391, 32 P. 2d 493.

The whole matter goes back to the first question stated as to the authority of the county board to make such a contract, and this includes the question as to whether the agreement made between the board and the engineer was in fact a contract.

Appellant cites *State, ex rel., v. Sinclair,* 103 Kan. 480, 175 Pac. 41, where it was held that a superintendent of public schools is a public officer, yet he is also an employee of the board, and appellant insists that it can be readily seen that that case and the one at bar are analogous in determining whether or not the county engineer is to be considered a public officer or a public employee. A brief reference to the duties of a superintendent of schools in cities of the

first and second class may help to show the difference between the duties imposed by statute in that case as compared with the duties of a county engineer. G. S. 1935, 72-1608, directs that—

"The superintendent shall have charge and control of the public schools of the city, subject to the orders, rules and regulations and bylaws of the board, and shall receive for his services such compensation as the board may allow."

It will be observed from this quotation that the superintendent's duties are subject to the supervision of the board which employs him and are not left to his own discretion or judgment. Neither are they specified and outlined by statute as they are for a county engineer.

G. S. 1935, 68-502, at great length and with eight specific provisions outlines the duties of a county engineer, they being, among others, to prepare plans, specifications and estimates for roads, bridges and culverts; to act for the county in all matters relating to the supervision of the construction, repairing and maintenance of roads, bridges and culverts; to advise and direct township highway commissioners and road overseers as to the best methods of construction, repairing and maintaining highways, bridges and culverts; to prepare plans, specifications and regulations for such work; to keep records of purchases of material, machinery, etc.; to study soil conditions and collect information as to gravel, stone, sand, clay and other road- and bridge-building material; to make maps concerning such matters to be filed with the county clerk, and to answer inquiries and advise highway officials concerning such improvements.

The preceding section provides for the appointment of county engineer by the board of county commissioners for such time as they may deem necessary, and he is subject to removal only for cause by the board or the highway commission or by dissolution of the engineer district. All such appointments are required to be approved by the state highway commission.

The provision for the salary of the county engineer is included in chapter 28, concerning fees and salaries of county officers, which fixes such salaries for different sized counties at definite amounts, but for small counties like Ottawa, at not less than $1,200 per annum. It was also included in the emergency statute for fees and salaries, chapter 186 of the Laws of 1933, which provided in section 18 for the limited salary of $1,200 per annum for a county the size of Ottawa county, but with the further provision that the

board of county commissioners might increase that salary by fifty percent when in their judgment the designated salary was insufficient.

Appellant insists that these duties do not in any way delegate to the county engineer any of the sovereign rights of the state, citing decisions from other states which are claimed to be approved and followed in the case of *Jones v. Botkin,* 92 Kan. 242, 139 Pac. 1196, where a cell-house man in the state penitentiary was held not to be an officer but to be a subordinate officer or employee within the meaning of certain laws cited.

We have studied carefully the decisions cited by appellant from other jurisdictions, and particularly the case of *Hall v. Wisconsin,* 103 U. S. 5, and we find among the differences between that case and the one at bar that the legislature did not create the office there under consideration but authorized the governor to contract with individuals for certain specified work to be done, which arrangement the legislature referred to as a contract.

In the case of *State v. Ottawa,* 84 Kan. 100, 113 Pac. 391, which concerned the application of the eight-hour law to laborers, workmen, mechanics and other persons employed on behalf of a city of this state, it was said in describing the several groups in the service of the city:

"Officers are excluded by the use of the word 'employed,' an office being distinguished from an employment in that it implies tenure, duration, emolument and duty. . . ." (p. 105.)

In the case of *Haney v. Cofran,* 94 Kan. 332, 146 Pac. 1027, it was said that a policeman exercises many of the functions and important duties imposed upon him by the legislature.

In the case of *Jagger v. Green,* 90 Kan. 153, 133 Pac. 174, it was said that field men of the department of health of the city of Kansas City are merely subordinate employees who work under the direction and supervision of the health commissioner, who is the only person connected with that department who holds a position analogous to an office.

The distinction between an officer and an employee is that the responsibility for results is upon one and not upon the other. There is also upon an officer the power of direction, supervision and control. The distinction between a public officer and an employee is concisely made in 22 R. C. L. 379, in the following language:

"A public office is not the same thing as a contract, and one contracting

with the government is in no just and proper sense an officer of the government. The converse is likewise true and an appointment or election to a public office does not establish a contract relation between the person appointed or elected and the public."

In the same volume, at page 525, it is said:

". . . . the right to a public office carries with it the right to any emoluments which may pertain to it, and to the person legally holding the office belong the perquisites and emoluments attached by law to the office, as fully as does the office itself."

In 46 C. J. 927 the matter is distinguished at considerable length, a part of which is as follows:

"It is important to distinguish an office from an employment, also, because in many respects the rules of law governing the relation of employee and employer do not govern the official relation, which is regulated by that part of the law which may be spoken of as the law of officers." (p. 928.)

In 53 A. L. R. 595 it is stated:

"It may be stated, as a general rule deducible from the cases discussing the question, that a position is a public office when it is created by law, with duties cast on the incumbent which involve an exercise of some portion of the sovereign power and in the performance of which the public is concerned, and which also are continuing in their nature and not occasional or intermittent; while a public employment, on the other hand, is a position which lacks one or more of the foregoing elements." (See, also, 93 A. L. R. 332.)

The duties of an ordinary employee are ministerial, being in obedience to the mandate or legal authority of another and without the exercise of his own judgment. (2 Bouvier's Law Dictionary, 3d ed., 2219; 40 C. J. 1208.)

Under these authorities and the fact that the legislature created the office of county engineer, prescribing at great length the duties, authorities and responsibility of the incumbent, and leaving only to the county board the matter of the appointment, subject to the approval of the highway commission, the length of time deemed necessary for his service and the right to make his salary more than $1,200 a year, his work is to no extent ministerial or subject to the supervision and direction of the appointing power, but his position is a public office created by the legislature as much so as that of the county commissioners constituting the county board appointing him.

The case of *Cornelius v. Robson,* 103 Kan. 467, 173 Pac. 917, involved the resignation of surveyor, the appointment of engineer, the failure of the state highway commission to approve the same and the setting aside of an appointment, yet throughout the opinion the position of county engineer was regarded as a public office.

The fact that the minutes of the county board mention the agreement it made with the plaintiff engineer as a contract will not determine the matter and make it a contract of employment unless it is such in fact. The determining feature in the matter is whether the plaintiff as county engineer was an officer or an employee.

Appellant asks the question whether the county board had authority to make such a contract. It had authority to appoint an engineer, fix the time he would be needed and designate a salary to be not less than $1,200 a year, but its only right to do so was that given it by the legislature specifically. No such right existed by virtue of the positions held by the members of the board or by the board itself except in obedience to and in compliance with the directions of the legislature. What the legislature created and directed others to do is not a right or authority on their part as public officers, and the legislature can repeal, amend or modify its own acts, which include acts it may have authorized, for the time being, other officers to execute, but the carrying out of such directions is by no means the making of an independent contract.

In the case of *Harvey, Treas., v. Comm'rs of Rush Co.*, 32 Kan. 159, 4 Pac. 153, it was contended by three county officers of Rush county that the election and qualification of a county officer is a contract entitling him to compensation for his services during the term for which he is elected, and that the legislature is prohibited from making a law to diminish the salary of an officer elected and qualified before its passage. It was there held:

"A county office is not a contract, and the incumbent is not protected in it by the prohibition of the federal constitution against the impairment of the obligation of contracts. A county officer has no such vested interest in the salary as will prevent the legislature from diminishing it during his term of office. (*Comm'rs of Norton Co. v. Shoemaker,* 27 Kan. 77; *Gray v. Crockett,* 30 Kan. 138, 143.)" (Syl.)

In the body of the opinion it was stated:

"Public offices in this state are mere agencies for the benefit of the people —not contracts on their part with the officeholder for his benefit. Therefore, there is no contract, express or implied, between a public officer and the state or county whose agent he is. Officeholders have no agreement or contract that they shall receive any particular compensation for the term they hold office. Their terms are fixed with the view to public utility and convenience, and not for the purpose of granting the emoluments or salary during any fixed period to the officeholder. The legislature may exercise its control by increasing or diminishing the salary or emoluments of an office. . . ." (p. 162.) (See, also, *Coulter v. Pool,* 187 Cal. 181, 201 Pac. 120.)

We conclude that while the board of county commissioners had authority to appoint a county engineer and to fix the time of his service and the amount of his compensation, such arrangement was not a contract, because the appointee was to be a public officer, and the authority exercised by the board was conferred by statute which a subsequent legislature was fully authorized to repeal, amend or modify. The demurrer to the petition was therefore properly sustained.

The judgment is affirmed.