Michael P. Dreiling Liberal City Attorney 419 North Kansas P.O. Box 2619 Liberal, Kansas 67905
Dear Mr. Dreiling:
You request our opinion concerning K.S.A. 1998 Supp. 19-205 which prohibits a county commissioner from holding a city office.[1]
You indicate that a Seward County Commissioner who has been employed by the City of Liberal since 1997 has been promoted to the position of Public Works Director. You inquire whether such position is a "city office" pursuant to K.S.A. 1998 Supp. 19-205
which provides, in part:
 "[No] person holding any . . . city office . . . shall be eligible to the office of county commissioner in any county in this state."
You indicate that the City of Liberal has a Commission-Manager form of government and operates pursuant to K.S.A. 12-1001 et seq. The City Commission appoints a manager who "holds office at the pleasure of the board" and attends to the administration of the city's business.[2] The City Manager appoints and removes all department heads, including the head of the Public Works Department.[3]
If the Public Works Director is a public employee rather than a city officer, K.S.A. 1998 Supp. 19-205 will not apply. If the position is a "city office", then the statute will preclude the Public Works Director from also serving as a County Commissioner.
In Durflinger v. Artiles,[4] the Kansas Supreme Court reviewed Kansas appellate decisions, statutes and other treatises that address the difference between a public employee and a public officer. The Court concluded that the essential characteristics of public office are: (1) a position created by statute or ordinance; (2) a fixed tenure, and (3) the power to exercise "some portion of [the] sovereign function of government."
 "In 63 Am.Jur.2d, Public Officers and Employees § 1 . . . it is commented:
 "`A public officer is such an officer as is required by law to be elected or appointed, who has a designation or title given him by law, and who exercises functions concerning the public, assigned to him by law. The duties of such officer do not arise out of contract or depend for their duration or extent upon the terms of a contract.'"[5](Emphasis added.)
The Court also reviewed the definition of "public office" from Black's Law Dictionary:
 "`Essential elements to establish public position as "public office" are: position must be created by constitution, legislature, or through authority conferred by legislature, portion of sovereign power of government must be delegated to position, duties and powers must be defined, directly or impliedly, by legislature or through legislative authority, duties must be performed independently without control of superior power other than law, and position must have some permanency and continuity.'"[6]
In Durflinger, the Court distinguished between the superintendent of a psychiatric hospital and the staff physicians who served under the superintendent and concluded that while the superintendent was a public officer, the staff physicians were not public officers because, among other things, the staff physicians "were under the control and supervision of the head of the hospital. . . ."
The Court also relied upon Jagger v. Green[7], which concluded that a "field man" who served under the health commissioner was not a public officer, despite the fact that the ordinance creating the health department provided for the creation of three positions as "field men" who were referred to in the ordinance as "officers" with fixed compensation:
 "`The plaintiff [field man] was not one of the officers specifically named in the act of 1907 whom the commissioners were authorized to appoint. He was appointed by virtue of the power given to appoint "such assistants and other officers and servants" as the public interest may require. . . .'
 "`[The] health commissioner is the only person connected with the department of public health who holds a position analogous to an office. The field men are merely subordinate employees who work under his direction and supervision and for whose conduct he is responsible . . . [It] is not important that the ordinance uses the term "officers" in one place in speaking of the appointees in the health department. Considering the nature of the service, its relative importance, its essentially subservient character, and the placing of responsibility for results upon a superior who is given full power of direction, supervision and control, it must be held that the plaintiff was not a city officer within the meaning of the [civil service] statute.'"[8]
Past Attorney General opinions that have addressed the public office vs. public employment issue have concluded that K.S.A.19-205 does not preclude a county sewer inspector or a city water department employee from serving on a county commission because both positions lack the right to exercise "some definite portion of the sovereign power."[9]
In deciding whether the Public Works Director in the City of Liberal is a public officer or a public employee, we note the following:
1. In a Commission-Manager form of government, such as the City of Liberal, the City Manager is a public officer.[10] The Liberal City Manager appoints and removes department heads such as the Public Works Director.[11]
2. Liberal City Ordinance No. 1-401 creates several departments, one of which is the Public Works Department, but no ordinance creates the position of Public Works Director nor dictates its duties and responsibilities. (The ordinance does create the positions of City Attorney, City Prosecutor, and City Clerk and defines their duties.)
3. The job description for the Public Works Director provides that the Director reports to the City Manager and works under the latter's "guidance and direction."[12]
Since the Public Works Director serves under the direction of the City Manager and is not a position created by statute or ordinance, it is our opinion that the position of Public Works Director is not a "city office" and, therefore, K.S.A. 1998 Supp.19-205 does not preclude a Seward County Commissioner from being employed in that position.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Mary Feighny Assistant Attorney General
CJS:JLM:MF:jm
[1] State ex rel. Kellogg v. Plymell, 46 Kan. 294 (1891);Demaree v. Scates, 50 Kan. 275 (1893).
[2] K.S.A. 12-1010; 12-1011; 12-1014.
[3] K.S.A. 12-1014; Liberal City Ordinance No. 1-403; 1-406.
[4] 234 Kan. 484 (1983).
[5] 234 Kan. at 503.
[6] 234 Kan. at 503.
[7] 90 Kan. 153 (1913).
[8] 90 Kan. at 158.
[9] Attorney General Opinions No. 80-158 and 82-111.
[10] K.S.A. 12-1011; Attorney General Opinion No. 82-174.
[11] K.S.A. 12-1014; Liberal City Ordinance No. 1-403; 1-406.
[12] Job Description for Public Works Director.