Lindley v. State Board of Administration.

No. 26,209.

E. H. LINDLEY, *Appellant*, v. JONATHAN M. DAVIS, A. B. CARNEY,
ROGER WILLIAMS, W. P. LAMBERTSON, and WILLIAM L. BURDICK,
*Appellees.*

SYLLABUS BY THE COURT.

STATE BOARD OF ADMINISTRATION—*Power to Remove Chancellor of State Uni-
versity at Pleasure of the Board.* In an action to enjoin the enforcement of
an order of the board of administration removing the chancellor of the state
university from his position, it is *held:*

The statute providing that the chancellor shall hold his office until re-
moved by the board for cause is in conflict with the provision of the state
constitution that when the tenure of an office is not declared by law it shall
be held during the pleasure of the authority making the. appointment, "but
the legislature shall not create any office the tenure of which shall be longer
than four years." A chancellor appointed under such statute holds only
during the pleasure of the board of administration.

The court cannot review the action of a board in removing an officer who
holds during its pleasure unless upon ground of actual corruption or what
would be tantamount thereto.

The pleadings disclose an exercise of the board's power to remove the
chancellor at its pleasure rather than an attempt to establish grounds for a
removal.

Appeal from Douglas district court; HUGH MEANS, judge. Opinion filed
January 10, 1925. Affirmed.

*C. A. Smart,* and *Walter G. Thiele,* both of Lawrence, for the appellant.

*A. M. Harvey, Randal C. Harvey,* and *Paul L. Harvey,* all of Topeka, for
the appellees.

The opinion of the court was delivered by

MASON, J.:   The state board of administration on December 27,
1924, made an order removing the chancellor of the state university
from that position.   On the same day the chancellor brought an
action in the district court asking an injunction against the enforce-
ment of the order, the operation of which was stayed pending the
hearing.   On January 5 judgment on the pleadings in favor of the
defendants was rendered in the district court, and the plaintiff
appeals.

The plaintiff contends that the board of administration can re-
move the. chancellor of the university only for cause.   The board
asserts that he is removable at its pleasure.

The statute contains two seemingly conflicting provisions, one

supporting the plaintiff's view, the other that of the board. They are:

"The board of administration shall appoint a chancellor, who shall be the chief officer of the university, the head of each department thereof, and whose duties and powers otherwise than prescribed in this act shall be prescribed by the board of administration. . . . The said chancellor shall hold his place at the pleasure of the board." (R. S. 76-304.)

"It shall be the duty of the board of administration to appoint a superintendent or other chief executive officer of each institution under its control, and said officer shall hold his office unless removed by the said board of administration for official misconduct, neglect of duty, incompetency, or other cause; belief or political affiliation of such officer shall not be sufficient cause." (R. S. 76-121.)

"In case any superintendent or other executive officer of either of the institutions under the control of the state board of administration shall fail, neglect or refuse to abide by the rules and regulations of such board or shall fail to carry out in good faith any order of such board, the said board shall have power to remove such officer from his office." (R. S. 76-105.)

If these conflicting statutes stood upon equal footing in point of time of their enactment there would be good ground for invoking the rule that the general provision must yield to the specific, thus giving effect to that relating to the chancellor alone. The provision that the chancellor should hold his office during the pleasure of the appointing power (then the board of regents) originated in 1889 (Laws 1889, ch. 258, § 8.) The section containing it was rewritten in the revision of 1923, but the only change made other than verbal was to substitute the new appointing power, the board of administration, for the old. In 1905 the board of control was given the appointment of heads of state institutions other than the university, the appointees to hold until removed for cause. (Laws 1905, ch. 475, §§ 24, 21.) In 1917 the board of administration was created, and the university, as well as the other state institutions, was placed under its supervision. (Laws 1917, ch. 297, § 14.) In the revision of 1923 the name of the board of administration was substituted for that of the board of control in the sections of the act of 1905 above cited. The plan of having the head of the university hold office until removed for cause instead of being removable at pleasure was therefore the later expression of the legislature on that particular subject, and should have the preference under the rule for construing the provisions of a statute, so far as they are the same as those of any prior statute, as a continuation of them and not as a new statute. (R. S. 77-201, subdiv. first.)

But the statute authorizing the chancellor of the university to hold the position until removed for cause is in conflict with the provision of the state constitution that—

"The tenure of any office not herein provided for may be declared by law; when not so declared such office shall be held during the pleasure of the authority making the appointment, but the legislature shall not create any office the tenure of which shall be longer than four years." (Art. 15, § 2.)

The chancellor is obviously an officer. He is described in one statute as a "superintendent or other chief executive officer" of a state institution and in another as the chief officer of the university. He is the head of a governmental department. A statute fixing a definite term of office at more than four years or an indefinite tenure during good behavior is to that extent void, and the incumbent holds at the pleasure of the appointing power. (*Lewis v. Lewelling,* 53 Kan. 201, 36 Pac. 351; *Haney v. Cofran,* 94 Kan. 332, 146 Pac. 1027.)

It is suggested in behalf of the plaintiff that although the chancellor holds his position at the pleasure of the body which appointed him, there are limits to arbitrary conduct in this respect beyond which the board may not go, and that the pleadings raise an issue of fact in this regard. In an English case, where the head master of Rugby was dismissed by the governing body and the validity of the act was challenged in court, language was used indicating the power to remove in order to be beyond judicial review must be honestly and fairly exercised. There, however, the court refused to interfere, Vice Chancellor Malins saying:

"It is impossible for this court, when parliament has put it so absolutely in the power of the governing body, to interfere. I repeat, according to the construction of the act of parliament, my opinion is that every head master of a public school—that is, of the great public schools, for I believe every one of them is subject to this act—that every head master is as much at the mercy of the governing body as a coachman is at the mercy of his master, and can be dismissed with or without reason." (*Hayman v. Rugby School,* 43 L. J. Ch. 834, 855; L. R. 18 Eq. 28.)

Possible conditions might of course exist justifying a court in disregarding an order removing an officer who held only at the pleasure of the body making it, such, for instance, as actual corruption or its equivalent. But the fact of its having been due to prejudice or passion will not justify a judicial retention in office of one whose title to it has been thus terminated.

We do not regard the allegations of the petition as tendering an issue of fact proper to be determined by the court.

Lindley v. State Board of Administration.

It is suggested further that, conceding, for the purpose of the argument, that the board had the power to displace the chancellor without reason other than its own pleasure, it undertook to remove him for cause and is confined to that method. We think the pleadings show the order of removal to have been made in the exercise of the plenary and absolute power of the board, the allegations of its answer in that connection having rather the color of explanations of the motives which actuated it than of grounds authorizing its course.

The judgment is affirmed.

Harvey, J., not sitting.

Dawson, J. (dissenting): The allegations of the petition recite that the removal of the chancellor was brought about by malice, oppression and caprice on the part of the board of administration and the governor.

The defendants' demurrer admits that these allegations are true. It frequently happens, of course, that such a demurrer is aimed at a petition merely to invoke the court's judgment on the legal question whether such allegations, if true, would state a cause of action. But such is not the present case. This court takes judicial notice of the public acts and proclamations of the governor and of notorious matters of current history. (*The State v. Kelly*, 71 Kan. 811, 81 Pac. 450.) The governor's pronunciamentos seeking to justify his act of removing the chancellor and his summary removal from office of a member of the board of administration for refusing to be coerced into voting for the chancellor's removal, and the governor's public pronunciamento on that incident, go very far towards proving the facts alleged in the chancellor's petition. There is nothing in the Kansas constitution susceptible of an interpretation that arbitrary power can be conferred upon any officer or board of officers in this commonwealth.

In *Drainage District v. Railway Co.*, 99 Kan. 188, 204, 205, 161 Pac. 937, it was contended that the findings and conclusions of an official board created by the legislature were not subject to judicial review. This court said:

"That goes too far. The plaintiff board is an administrative agency. Within its powers it is supreme. But its orders must be reasonable. And it cannot be the final judge of the reasonableness of its own orders. That would be tying

administrative and judicial powers in one hand, and this our own constitution will not allow. That was the constitutional rock which wrecked the court-of-visitation act nearly twenty years ago. [Citing many authorities.] . . .

*"It may therefore be said generally that when the state creates an agency to serve its public needs and confers administrative powers upon it, whatever be the language of the statutes conferring such powers, a just and reasonable exercise of such powers is intended, and the power to make or exercise unreasonable, arbitrary and confiscatory orders is not intended."*

In *The State, ex rel., v. Mohler,* 98 Kan. 465, 471, 158 Pac. 408, where the validity of an act conferring certain powers on the secretary of the state board of agriculture was questioned, it was said:

"It [the act] merely .confers upon him administrative power such as has become common in this state. The state charter board is given similar power to grant or withhold a charter for a bank. (*Schaake v. Dolley,* 85 Kan. 598, 118 Pac. 80.) The insurance commissioner is authorized to grant, withhold and revoke licenses to transact insurance business in Kansas. The public utilities commission is authorized to grant or deny permits to conduct a public-service business. The state board of medical registration and examination is authorized to grant, deny or revoke licenses to practice medicine. (*Meffert v. Medical Board,* 66 Kan. 710, 72 Pac. 247.) The exercise of such power is merely the exercise of administrative discretion. *If this power is abused, the courts are open to the aggrieved party, if not by some statutory review then by the extraordinary and prerogative remedies of injunction or mandamus."*

The moving-picture censorship statute was only upheld by virtue of this same principle. In that case the chief justice, speaking for a majority of the court, said:

*"If the board should act fraudulently, or so arbitrarily and capriciously as to amount to fraud, a resort to the courts may be had, and as against such action an aggrieved party may have redress.* . . .

"There have been repeated holdings that the decisions of a board or other tribunal upon which the legislature has conferred the exercise of nonjudicial power, if made in good faith, are not open to judicial control or review, and that in such a case a court may go no farther than to prevent the abuse of the power so vested. In respect to the powers conferred on a municipal body it has been said that 'the courts have no supervisory power over the policy of municipal legislation. *They can only interfere to curb action* which is *ultra vires* because of some constitutional impediment or lack of antecedent legislative authority, *or because the action is so arbitrary, capricious, unreasonable and subversive of private right as to indicate a clear abuse rather than a bona fide exercise of power."* (*Photo Play Corporation v. Board of Review,* 102 Kan. 356, 359, 169 Pac. 1154.)

The opinion of the majority of the court admits that if the removal of the chancellor had been brought about by *corruption* the act of removal would be of no validity. I can find nothing in the

law books—and the majority opinion cites nothing—to justify the novel doctrine that while corruption will invalidate an official act, malice, oppression and caprice are insufficient to invalidate it!

The humblest eighteen-year-old schoolmistress in charge of a one-room school on our western prairies holds her job by no such precarious tenure. She could only be dismissed upon charges preferred, with an opportunity to answer them, by the uncoerced votes of a majority of the school board, and with the concurrence of the county superintendent. (*Parrick v. School District*, 100 Kan. 569, 164 Pac. 1172.) Under the court's opinion carried to its logical conclusion, not only may the chancellor be truculently dismissed without a moment's notice, but a hooligan can be installed in his stead, and under the same interpretation of the same statute every professor, every instructor, every janitor can be discharged with equal expedition.

It will not do for the courts to refrain from taking jurisdiction of a cause merely because of its disagreeable features nor because the legislature is about to meet and a new governor is about to be inducted into office, on the theory that the present unhappy dislocation of the management of the state university can speedily be set right by other than judicial means. That the legislature is about to meet and that a new governor is about to be inaugurated are merely fortunate circumstances giving hope of early correction of an otherwise deplorable situation. The matters alleged in the chancellor's petition and admitted to be true by the demurrer might have happened in the middle of a gubernatorial term with no session of the legislature impending. In such situation, would equity have been equally powerless to give redress unless "corruption" were alleged?

What I have said herein is but a scant outline of my views on this subject, but it will serve to show why I am compelled to dissent from the opinion of the majority of the court.