No. 44,796

HARVEY LEE RIGGS, *Appellant,* v. THE CITY OF BELOIT, KANSAS, a Municipal Corporation, *Appellee.*

(429 P. 2d 821)

Opinion filed July 12, 1967.

*Don W. Noah,* of Beloit, argued the cause and was on the brief for appellant.

*Thomas H. Conroy,* of Beloit, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

FATZER, J.: The plaintiff, Harvey Lee Riggs, commenced this action to require the defendant to reinstate him as a police officer of the city of Beloit, and to recover the salary due from the date of his unlawful discharge to the expiration of the term of his employment. Both parties filed motions for judgment on narrative admissions made and exhibits admitted at a pretrial conference. The district court sustained the motion of the city of Beloit, and the plaintiff has appealed.

The facts are not in dispute, and those pertinent are summarized. The city of Beloit, hereafter referred to as the city, is a city of the second class with a mayor-council form of government. At the organization meeting of the city council on April 20, 1965, Robert Belknap was appointed police officer, Patrolman No. 2, pursuant to K. S. A. 14-201 by the mayor, and by and with the consent of the council, for a term of one year. On May 10, 1965, Belknap resigned his office to enter private business.

On May 24, 1965, the plaintiff was appointed police officer, Patrolman No. 2, by H. Frank Cagle, the chief of police, after consultation and with the consent of the mayor, to fill the vacancy created by Belknap's resignation. On that date the plaintiff commenced work, and Cagle provided him with an official card reciting the following:

"BELOIT POLICE DEPARTMENT

"This is to certify that Harvey Lee Riggs has been appointed by the Mayor and the governing body of the City of Beloit, Kansas, to the position of Patrolman No. 2 to do and perform any and all lawful acts pertaining to the Police Department of the City of Beloit, Kansas.

"H. F. Cagle
"Mayor or Chief of Police.

"Subscribed and sworn to before me this 24th day of May, 1965.
"SEAL.

"Geo. D. Colby
"City Clerk"

The card was signed by Harvey Lee Riggs on the left-hand margin in the space provided for the officer's signature. The plaintiff was furnished an official police badge and his oath of office was administered by the city clerk. At that time, no formal action was taken by the city council confirming the plaintiff's appointment, but his employment was announced in the May 24, 1965, issue of the Beloit *Daily Call*. The plaintiff was a citizen of the United States; he had resided in the state of Kansas for a period of more than six months, and was more than 21 years of age. He was qualified to act as a police officer of the city except that he and his family were residing in Downs, Kansas, which fact was known to the mayor and each member of the city council.

On June 2, 1965, the plaintiff and his family moved to Beloit and have continued to reside therein during the period covered by this litigation. During all the time involved, the plaintiff reported regularly for duty and continued to perform duties normally assigned to a police officer. On August 17, 1965, he was summarily discharged by the chief of police due to a personality clash between the two officers. The plaintiff was not accorded a hearing by the mayor and council as contemplated by K. S. A. 14-822 before his purported discharge. He has done nothing since that date which would disqualify him from being an officer of the city, and has held himself ready to perform his duties. The vacancy created by the plaintiff's purported discharge was never filled by the mayor and city council.

On March 16, 1965, the city governing body adopted ordinance No. 1158 fixing the compensation for all statutory officers of the city. Section 4 of the ordinance related to members of the police department, and fixed the salary for Patrolman No. 2 at $325 per month. The Plaintiff was paid by the city after his salary was included in regular bimonthly payroll ordinances which were approved by the mayor and adopted by unanimous vote of all councilmen. On each payroll ordinance the plaintiff was listed as "Patrolman No. 2" and his salary, as well as the salary of other statutory officers, was charged to the City General Operating Fund A. The plaintiff received checks pursuant to payroll ordinances dated June 1, June 15, July 6, July 20, August 3, August 17, and September 7, 1965.

In a memorandum opinion, the district court concluded the plaintiff was a *de facto* officer and not entitled to reinstatement, and was not entitled to compensation following his discharge by the chief of police. It concluded the plaintiff's appointment was illegal because he lacked residential qualifications when appointed, and that the mayor and city governing body failed to formally make and confirm his appointment.

The pertinent portions of applicable statutes relating to second-class cities with a mayor-council form of government, read:

"Elective and appointive officers; terms; compensation . . . The mayor shall appoint, by and with the consent of the council, a city marshal, city clerk, city attorney, city assessor, and may appoint an assistant marshal, street commissioner, and such policemen and other officers as they may deem necessary. Officers so appointed and confirmed shall hold their offices for a term of one (1) year and until their successors are appointed and qualified. The council shall by ordinance specify their duties and compensation, and by ordinance abolish any office created by them whenever they may deem it expedient . . ." (K. S. A. 14-201.)

"Qualification of officers; how vacancies filled; oath and bond. All officers elected or appointed shall be qualified electors of said city, and the removal from such city of any officer shall occasion a vacancy in such office. Vacancies in the offices of the governing body shall be filled for the unexpired term at a special election to be called and held for that purpose, as may be provided by ordinance. Other vacancies, except in the offices of justice of the peace and constable, shall be filled until the next annual city election by appointment by the governing body. The clerk shall enter every appointment to office, and the date thereof, on the journal of proceedings . . ." (K. S. A. 14-205.)

The plaintiff concedes he was a *de facto* officer when he was appointed by the chief of police with the consent and approval of the mayor, since he was not a resident of the city, however, he contends

the disqualification to hold the office related only to residence, which was removed when he and his family moved to Beloit on June 2, 1965, and that he became a qualified elector thirty days thereafter on July 2, 1965. He argues that by the repeated passage of five payroll ordinances, none of which were vetoed by the mayor and all of which were unanimously consented to by the city council, listing him by name as being paid as Patrolman No. 2 under ordinance No. 1158, together with all other officers of the city, he was effectively appointed by the governing body as contemplated by the statute for Belknap's unexpired term, and he was a *de jure* officer from and after the passage of the ordinance on July 6, 1965. He cites and relies on *Hale v. Bischoff*, 53 Kan. 301, 36 Pac. 752, where the court refused to find the appointment to be void even though the mayor and city council did not act in full compliance with the statute.

It is noted that, with respect to the filling of a vacancy, K. S. A. 14-205 provides that "other vacancies . . . shall be filled until the next annual city election by appointment by the governing body. . . ." This language differs considerably from that used in K. S. A. 14-201 which states that "[t]he mayor shall appoint, by and with the consent of the council" the city officers enumerated, ". . . for a term of one (1) year and until their successors are appointed and qualified. . . ." The plaintiff suggests it is unnecessary that the same formal record be made when a vacancy is filled as compared to a situation when the original appointment is made. Be that as it may, the important question is the substance of the matter and not mere form and ceremony of the governing body.

While K. S. A. 14-201 requires that the duties and compensation of the statutory city officers enumerated, including policemen, shall be fixed by ordinance, no particular requirement or formal method is prescribed as to how the mayor shall appoint or the consent of the city councilmen shall be given. Likewise, K. S. A. 14-205 requires that the city clerk shall enter every appointment to office on the journal of proceedings, but no formal method is prescribed with respect to such entry on the journals of the city.

It is conceded the plaintiff was a *de facto* officer when he was appointed on May 24, 1965. However, on July 2, 1965, he became a qualified elector of the city and his disability was removed. Thereafter, and on July 6, 1965, the mayor approved payroll ordinance No. 737 which listed the plaintiff by name and authorized the

payment of his salary for "Patrolman No. 2" pursuant to ordinance No. 1158 from the City General Operating Fund A, which ordinance was consented to by the unanimous vote of all the city councilmen, and such ordinance was entered on the official journal of the city by the clerk. Thereafter, the mayor approved and the city council unanimously consented to four subsequent bimonthly payroll ordinances identical to ordinance 737, and this court is of the opinion that when the plaintiff was summarily discharged on August 18, 1965, he was a *de jure* officer of the city and that the ordinances heretofore mentioned constituted his appointment by the mayor, by and with the consent of the city council, in substantial compliance with the statute.

We note, but cannot approve, the city's contention the plaintiff was a *de facto* officer when he was summarily discharged by the chief of police. Having been appointed by the mayor, by and with the consent of the council, he was a *de jure* officer and was entitled to a hearing before the governing body pursuant to K. S. A. 14-822. The powers of the chief of police in a city of the second class with a mayor-council form of government are provided in K. S. A. 14-819. They relate to making arrests, and do not in any manner provide for the discharge or removal of the officers of the department. As indicated, the method of removal of the city marshal, also known as the chief of police, or any member of the police department in such a city is provided in K. S. A. 14-822. It is unnecessary to here quote the statute since it was not followed. It is sufficient to say that plaintiff was not lawfully discharged for any of the reasons stated therein and his right to hold the office and receive the emoluments thereto could not be terminated by the summary discharge of the chief of police.

During oral argument counsel for the plaintiff stated the plaintiff was only claiming compensation from August 18, 1965, to the first Tuesday in April, 1966, the expiration of Belknap's appointive term. Hence, it is unnecessary to further discuss the case.

We are of the opinion the district court erred in concluding the plaintiff was a *de facto* officer when he was discharged and was not entitled to reinstatement, or to the emoluments of the office. It is evident the plaintiff's claim for reinstatement is moot; the term for which he was appointed has expired, but he is entitled to compensation for the position of Patrolman No. 2 for the remainder of the term for which he was appointed. (*Moore v. Smith,* 160 Kan. 167,

160 P. 2d 675.) As indicated, the plaintiff claims compensation only until the expiration of Belknap's unexpired term. Accordingly, the judgment of the district court is reversed with directions to enter judgment in favor of the plaintiff for compensation due him as provided in ordinance No. 1158 from August 18, 1965, until the first Tuesday in April, 1966.

It is so ordered.