No. 45,093

MARVIN WILL, *Appellee*, v. THE CITY OF HERINGTON, KANSAS, (JOHN A. NAGELY, Mayor; D. C. MEULI, Commissioner of Finance & Revenue; LESTER B. BEAMES, Commissioner of Streets & Public Utilities), *Appellant*.

(443 P. 2d 667)

Opinion filed July 13, 1968.

*Thomas J. Butler, Jr.*, city attorney and *Edwin G. Westerhaus*, of Marion, argued the cause and were on the brief for the appellant.

*John F. Christner*, of Abilene, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: This contest concerns a city's liability for compensation of a member of its police department.

Herington is a city of the second class with a mayor-commission form of government. Appellee Marvin Will, a resident of Herington, became a police officer of that city in the summer of 1965. On August 1, 1966, one Charles Edmonson, who had previously been appointed assistant chief of police, resigned. Edmonson had received a salary of $390.00 per month for that classification according to city ordinance. While serving in that position he wore a badge marked "Captain" and worked the shift from 7:00 p. m. to 4:00 a. m. There is no salary classification for captain under the city ordinances. Upon the resignation of Edmonson the chief of police gave the captain's badge to appellee. Appellee assumed the shift formerly worked by Edmonson and performed the same

duties including the exercise of authority over two patrolmen. The chief of police informed the city clerk that appellee's salary was to be raised to $390.00 per month, and after August 1, 1966, appellee was paid at this rate instead of at the lesser rate for a patrolman. At no time was appellee's promotion or pay increase brought before the city commission except for the fact the members did sign his increased paycheck.

On September 16, 1966, the chief of police, on instructions of the mayor, informed appellee he was fired from the police department. The chief gave appellee no reason for the discharge.

At a regular meeting of the city commission held September 20, 1966, the subject of appellee being a police officer came up. Commissioner Meuli testified that at this meeting he stated that if the chief of police and the mayor felt appellee should be relieved of his duties, then he would go along and confirm their action and at this point he left the meeting. He further testified that while he was present at the meeting no matter regarding the appellee was voted upon by the commission. The city clerk, who writes the minutes of the commission meetings, testified that at the September 20th meeting, she left the room and did not hear any motion made by Commissioner Meuli, nor did she know of any vote thereon. The minute record of that meeting recited the following:

"After due consideration of Marvin Will's case, motion was made by Commissioner Meuli and seconded by Commissioner Beames, that the action of the Mayor and Chief of Police in terminating Marvin Will's services as a police officer of the City of Herington be confirmed, Mayor Nagely, Commissioner Meuli and Commissioner Beames voting aye.

"The City Clerk was instructed to advise Marvin Will that upon turning in his equipment to the Chief of Police, he would be entitled to a check for all sums due him, including his vacation pay."

At the September 27, 1966, meeting of the city commission the minutes of the September 20th meeting were read and approved.

Appellee did not seek other gainful employment from September 16, 1966, but was at all times thereafter ready, willing and able to return to work for the Herington police department if called upon to do so. Neither appellee nor Edmonson had ever taken an oath of office as assistant chief of police or furnished a bond therefor.

Appellee brought this action to regain his position as assistant chief and to obtain compensation for the period following September 15, 1966, until properly discharged. Issues were joined and trial had upon evidence presented by both sides. On March 28,

1967, the trial court held for appellee, ruling he was properly appointed to but improperly discharged from the office and decreeing he was entitled to pay at the rate of $390.00 until properly discharged. Appellee claims pay only to the period ending May 15, 1967.

The ultimate issues are the legality of appellee's appointment and removal, and we note first certain statutes and ordinances of the city.

Under K. S. A. Chapter 14, Cities of the Second Class, Part II, Commission Government, we find the following:

"1501. The board of commissioners shall appoint, by a majority vote of all the members thereof, the following officers, to wit: A city attorney, a city clerk, a city treasurer, a police judge, a city marshal, a fire chief, and *such other officers,* assistants and employees as they may deem necessary for the best interests of the city; but no such officer shall be appointed until the term and salary of the office to which he is appointed shall be prescribed by ordinance as hereinafter provided. . . . The terms of all appointive officers shall be for two (2) years and until their successors are appointed and qualified. In case of an appointment to fill a vacancy such appointee shall only serve for the remainder of the term for which his predecessor was appointed.

"1503. The board of commissioners shall have power by a majority vote of all the members thereof to remove, *for cause,* the city attorney, city clerk, city treasurer, police judge, city engineer, or the incumbent of any other appointive city office or employment whatever, and may by ordinance prescribe, limit or change the compensation of such officers or employees: *Provided, however,* That no fees whatever be paid to or allowed any such officer or employee as compensation for the services thereof. The chief of police, chief of the fire department, or any superintendent or foreman in charge of municipal work, may, with the consent of the board of commissioners, suspend or discharge any subordinate under his direction for neglect of duty or disobedience of his orders.

"1504. In case of the disability or any vacancy occurring by death, resignation or removal by the board of commissioners of any city officer, the said board shall, by a majority vote of all the members thereof, appoint some suitable person to fill the unexpired term. . . . The city clerk shall enter every appointment of office and the date thereof on the journal." (Our emphasis.)

Section 1-101, Article I of Ordinance No. 742, entitled Appointive Officers, provides:

"OFFICERS, WHEN APPOINTED. Section 1. At the first regular meeting of the board of commissioners of May of each odd numbered year, the board of commissioners shall appoint, by a majority vote of all the members thereof, the following officers: City Attorney, a City Clerk, a City Treasurer, a Police Judge, a City Engineer, a Chief of Police, assistant Chief of Police, a Street Commissioner, a Superintendent of Water and Light Plant, a Fire Chief, a

Milk Inspector, a Plumbing Inspector, a City Health Officer, and such other officers, assistants and employees as may by ordinance be provided for. The city clerk shall enter every appointment of office and the date thereof on the journal, provided, this section shall not cut short the term of office of any person now holding office; but the next appointment for such office shall be only to the regular time of appointment as herein specified."

Section 1-102 of the same ordinance provides that every appointive officer of the city shall qualify for office by taking and subscribing to a prescribed oath of office, and that any person so appointed shall receive from the city clerk a certificate of appointment.

Section 1-103 provides:

"TERM OF OFFICE. Section 3. That all officers above named shall hold their respective offices for the term of two years from the 15th day of May next after their said appointment and until their successors are duly elected and qualified, unless sooner removed by the board of commissioners in the manner provided by law. *Provided, however,* That if the appointment of any officer shall be deferred until May 15th or later, such officer shall hold his office only from the date of his appointment till the end of the regular term of said office, and until his successor is appointed and qualified."

Section 1-104 provides:

"REMOVAL OF APPOINTIVE OFFICERS. Section 4. The board of commissioners shall have power, by a majority vote of all the members thereof, to remove, for cause, any officer appointed under this ordinance."

Section 1-105 provides that in case of any vacancy of an appointive office the board of commissioners shall by majority vote appoint some suitable person to fill the unexpired term.

Section 1-106 provides that the assistant chief of police shall furnish bond in the sum of $500.00.

The city points out that only a *de jure* officer is entitled to pay, citing several of our cases including *Garfield Township v. Crocker,* 63 Kan. 272, 65 Pac. 273, in which this court stated:

"No action lies by an officer *de facto* to recovery for salary" (Syl. ¶ 2), and further said:

"None but an officer *de jure* can maintain an action for compensation or salary." (p. 273.)

The city also avers that, under our decisions, this rule is not restricted in its application to officers to the emoluments of which there are more than one claimant, again citing *Garfield Township* as well as later cases.

The city contends appellee was not a *de jure* officer, that at best he was only a *de facto* officer and as such cannot maintain an action

for compensation, arguing he could not become assistant chief of police without formal appointment by the city commission in compliance with K. S. A. 14-1504.

We dealt with a similar situation in *Riggs v. City of Beloit,* 199 Kan. 425, 429 P. 2d 821. Beloit is a city of the second class with a mayor-council form of government. Riggs was appointed a police officer by the police chief of that city after consultation and with the consent of the mayor. He was furnished certain indicia of office and took an oath of office administered by the city clerk. At that time no formal action was taken by the city council confirming his appointment. He was not then a resident of Beloit but resided in a nearby town. Soon thereafter he moved to Beloit. From the time of his initial appointment he performed the duties of a police officer for Beloit. His salary as a patrolman was listed in the regular bimonthly payroll ordinances which were approved by the mayor and adopted by unanimous vote of all councilmen. He received seven checks pursuant to these ordinances. He was summarily discharged by the chief of police due to a personality clash between the two officers. He was not accorded a hearing by the mayor and council. In Riggs' action for salary for the remainder of his term the city contended he had never been a *de jure* officer for want of formal appointment by the governing body. This court rejected the contention, holding that the applicable statutes prescribed no particular requirement or formal method as to how the mayor shall appoint or the consent of the councilmen shall be given, and further, that no formal method was prescribed with respect to the entry of such appointment on the journals of the city. Riggs was held to be a *de jure* officer, upon the basis that the payroll ordinances constituted his appointment by the mayor by and with the consent of the city council, in substantial compliance with the applicable statute.

We think the rationale of *Riggs* pertinent and should control as to appellee's appointment here—he likewise was paid as assistant chief of police by the city's governing body, the appointing authority. The statutory language governing mayor-council cities of the second class differs somewhat from that of mayor-commission cities of the second class, but the difference is nonessential. Each provides for appointment by the governing body. As aptly said in *Riggs,* ". . . the important question is the substance of the matter and not mere form and ceremony of the governing body." (p. 428.)

It must be noted in *Riggs* the city clerk administered an oath of

office and that appellee here took no oath and furnished no bond as prescribed by ordinance. The city further contends this omission is fatal to appellee's cause.

In Mechem's Public Offices and Officers, § 255, p. 163, respecting oaths of office, it is stated:

"But although the law usually requires the taking of an oath, it is not indispensable. It is . . . but a mere incident to the office and constitutes no part of the office itself."

Comment was made on the point in *Bailey v. Turner*, 108 Kan. 856, 197 Pac. 214:

"If all that the occupant of an office lacked of a *de jure* title grew out of the fact (for illustration) that the official oath had not been administered to him, there might be good ground for holding him entitled to the salary." (pp. 859-860.)

In *State, ex rel., v. Matassarin*, 114 Kan. 244, 217 Pac. 930, this court, concerned with the effect of failure of a public appointee to file his oath of office, said:

"In the absence of a statutory provision that the failure of an appointee to take and file his oath of office shall operate to create a vacancy, such failure by one who is appointed and has entered upon the discharge of his duties, and no action is brought by the state to declare a forfeiture of the office for such omission, will not of itself operate to create a vacancy in the office." (Syl. ¶ 4.)

The record is silent as to the circumstances of appellee's failure to file oath and bond but, at least, there is no indication the omission was due to any intentional or conscious neglect on his part. Apparently, in the mode of his predecessor, he assumed the duties of the office in good faith.

The ordinances contain no provision that such omission shall operate as a forfeiture of the office or create a vacancy and the city took no steps to have a forfeiture declared or oust appellee for such failure. Under all the circumstances we hold appellee was a *de jure* officer.

We turn now to the legality of appellee's removal from office. The city contends its action complied with K. S. A. 14-1503 in that under the last sentence thereof a chief of police may, with the consent of the board of commissioners, discharge any subordinate under his direction for neglect of duty or disobedience of his orders. Unquestionably, where the facts warrant, a chief of police has this power; however, under the record here, that authority was never exercised. To permit the city later to cloak the discharge

under a different guise would do violence to the stipulated facts that the chief of police discharged appellee upon instructions of the mayor, with no reason being given.

According to section 1-101 of city ordinance 742 the city's assistant chief of police is an appointive officer (such appointment being authorized by K. S. A. 14-1501), as distinguished from a mere employee. The first sentence of K. S. A. 14-1503 provides that the board of commissioners may remove an appointive officer for cause. The same proviso appears in section 1-104 of the ordinance. Hence the question seems to be whether appellee was in fact properly removed for cause.

In *Wichita Council v. Security Benefit Ass'n,* 138 Kan. 841, 28 P. 2d 976, this court was concerned with a proviso authorizing action "for cause," and said:

"The word 'cause' as here used means what is sometimes spoken of as legal cause, or just cause, a substantial, reasonable or just cause, related to matters of a substantial nature pertaining to duties or obligations imposed. [Citations.]

"The word carries with it the necessity of an appropriate charge, or accusation, notice of the charge with an opportunity to present a defense, and a fair hearing before an official or tribunal authorized to conduct such a hearing, and a decision on the merits of the charge. . . . In *Lindley v. State Board of Administration,* 117 Kan. 558, 231 Pac. 1026, this court had before it the distinction between authority to remove for cause, and at pleasure, and it was recognized that removal for cause required a charge, notice and hearing, while removal at pleasure did not." (p. 846.)

And in *Riggs v. City of Beloit,* supra, this court ruled that the statute applicable to removal of police officers in cities of the second class with mayor-council form of government (K. S. A. 14-822) contemplated a hearing and that a *de jure* police officer was entitled to a hearing before the governing body prior to discharge. Although the statutory language with which we are concerned here is somewhat different, again we see no reason for making a distinction between mayor-council and mayor-commission form of government for second-class cities in the removal of a police officer. Each statute authorizes removal action by the respective governing bodies for good cause, thus a hearing is indicated.

The veracity of the minutes of the commission's September 20th meeting, brought into question, is not of great import. Taking the minutes at face value, and disregarding their contradiction found in the testimony, it is clear appellee was never accorded the requisite charge, notice or hearing prior to discharge. The minutes do evidence the only action taken by the governing body in its con-

siDeration of appellee's removal. Hence appellee's removal must be held to be ineffectual and his discharge unlawful.

Finally, the city contends the trial court erred in failing to consider lack of mitigation of damages by appellee because he did not seek other gainful employment after his purported discharge so as to lessen his damages. It cites familiar law applicable to breach of contract and trespass cases to the effect that one is bound, as far as reasonably possible, to reduce his damage. This action is distinguishable from that line of cases. Breach of contract is not involved and the action is not one for damages. Rather, it is one based upon an officer's statutory right to his office. If lawfully entitled to the office, the right to compensation attached to the office and may be recovered in full regardless of any service rendered or of earnings elsewhere in other employment, dependent, of course, upon the officer's ability and willingness to perform in the office. In *Riggs* we approved a judgment granting compensation to the officer for the remainder of the term for which he was appointed.

The trial court correctly ruled as to appellee's compensation and its judgment is affirmed.

APPROVED BY THE COURT.