Harold Lee MILLER, Plaintiff-Appellee,

v.

CITY OF MISSION, KANSAS; Roland R. Warman, Jr.; George C. Lauber, Jerry Schmitz, Warren C. Neal, Robert M. Mellott, and William M. King, Defendants-Appellants.

No. 81–1785.

United States Court of Appeals, Tenth Circuit.

April 11, 1983.

See also D.C., 516 F.Supp. 1333.

James L. Eisenbrandt, Overland Park, Kan. (Sylvester Powell, Jr., of Heilbron & Powell, Kansas City, Mo., with him on brief), for defendants-appellants.

Bryan E. Nelson, Overland Park, Kan. (Mary Ellen Rose, Overland Park, Kan., with him on brief) of Alder, Nelson & McKenna, Overland Park, Kan., for plaintiff-appellee.

Before SETH, Chief Judge, McWIL-LIAMS, and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

Harold Miller sued the City of Mission, Kansas (City), its former mayor, and several former City council members under 42 U.S.C. § 1983 (1976).[1] Miller claimed that defendants' termination of his employment as assistant police chief deprived him of liberty and property interests in violation of the Fourteenth Amendment. The case was tried to a jury, which returned its verdict by answers to special questions. The court awarded damages to Miller in the amount of $288,395.

On appeal, defendants contend that: (1) the trial court erred in holding, as a matter of law, that Miller's post-termination hearing failed to provide due process; (2) the evidence of a liberty interest deprivation was insufficient to warrant presentation to the jury; (3) the evidence was insufficient to support the damage award against the individual council members; (4) the award of damages for employment compensation was improper; (5) the awards of punitive damages were improper; (6) the instruction on qualified immunity was erroneous; and (7) certain evidence was admitted erroneously. We affirm in part and reverse in part.

## I.

### BACKGROUND

We begin with a brief recitation of the circumstances giving rise to this case, viewed in the light most favorable to the jury verdict. *E.g., Gardner v. General Motors Corp.,* 507 F.2d 525, 527 (10th Cir.1974). A more detailed presentation of the facts will be included in our discussion of the issues on appeal.

Miller began his employment with the City as a police patrolman in 1960. He became a sergeant in 1965, and was later promoted to lieutenant and then to captain and assistant police chief. At the time of his termination he was fifty-two years old. Until his dismissal, he had never received a reprimand or been given any official notice that his job performance was unsatisfactory.

1. Miller initially included an additional claim for relief pursuant to 42 U.S.C. § 1985(3) (1976). Prior to trial, the district court concluded that Miller had failed to state a claim under that section. Miller does not argue to the contrary on appeal.

Defendant Roland Warman was elected mayor of the City in 1975. In September and October of that year, several meetings were called by Warman and attended by defendant council members. These meetings were held in private homes and were not announced to the public. Various City personnel matters were discussed, including the possible termination of both the chief of police, Ivan J. Pike, and plaintiff Miller. The mayor stated his belief that action by the council as a body was required to fire a person, and that he needed council support of his decision to terminate Miller and Pike. The city attorney advised the group that termination would have to be based on "some good reasons." Rec., vol. III, at 398.

On October 13, 1975, Miller was called to a meeting with the mayor and the city attorney, told that he was terminated, and given the option of tendering his resignation. The mayor told Miller that he was being dismissed because he was to blame for the low morale and high turnover in the police department. The city attorney informed Miller that he was entitled to a hearing; however, the City did not offer Miller either a pre-termination hearing or a private one. Miller tendered his resignation and then withdrew it shortly thereafter. His last day of work was October 16.

Miller received a letter from the mayor on October 22 informing him that he was entitled to a public hearing on his dismissal and listing seven reasons for his termination.[2] Miller requested a hearing, which was held January 17, 1976. At the beginning of the hearing, Miller was given a list of additional reasons for his termination. Following the hearing the mayor refused to reinstate Miller.

The dismissal of Miller and Chief Pike generated great public interest and received extensive media coverage. The mayor publicly announced the terminations by press releases on October 16 and 17, and numerous newspaper articles on the situation appeared during this period. The January hearing was attended by a large crowd and the press.

After his dismissal, Miller sought law enforcement employment in several nearby cities without success. He also looked for employment in numerous positions unrelated to police work, and ultimately found a job selling carpets in May 1976. Miller held that job until December 1976, and was then unemployed until July 1977, when he began work as a janitor at a local school. He subsequently worked briefly as a guard at a hospital, and as a janitor for an airline company. He was employed in the maintenance department of a hospital at the time of trial.

In a pretrial hearing on the parties' cross motions for summary judgment, the district court ruled as a matter of law that Miller had been deprived of a property interest by his discharge. This ruling is not challenged by defendants on appeal. The court concluded that Miller had therefore been entitled to a pre-termination hearing unless defendants could show that extraordinary circumstances had existed at the time of termination justifying denial of that hearing. Whether such extraordinary circumstances existed was a matter left to subsequent determination.

## II.

## DUE PROCESS

The Fourteenth Amendment prohibits a state from depriving a person of liberty or property without due process of law. "The fundamental requirement of due process is

---

**2.** The stated reasons were:
"For failure to communicate with the chief and with the officers of your department; Failure to follow assignments of the chief of police, including attendance at city council meetings in the City of Countryside; Failure to supervise safety and bicycle checks; Failure to supervise and attend street dances;

Not being responsible to the officers and men; Disagreement with policies of the City; and A lack of qualifications for an office requiring command of the men in your department, with the result that good officers were leaving the City."
Rec., vol. III, at 388.

the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)).

In its rulings on the cross motions for summary judgment, the district court determined as a matter of law that the hearing officer who presided over the January proceeding was biased, that the hearing was defective, and that it did not afford Miller due process. In response to defendants' motion at the close of the evidence to set aside the summary judgment, the trial judge reaffirmed these rulings and instructed the jury that the January hearing did not comply with the requirements of due process.

On appeal, defendants contend that the court below erred in holding the hearing defective as a matter of law. They also urge as error the court's failure to apply the Rule of Necessity to uphold the hearing. We find these arguments unpersuasive.

■ An impartial tribunal is an essential element of a due process hearing. *Staton v. Mayes,* 552 F.2d 908, 913 (10th Cir.), *cert. denied,* 434 U.S. 907, 98 S.Ct. 309, 54 L.Ed.2d 195 (1977); *Bogart v. Unified School District No. 298,* 432 F.Supp. 895, 903 (D.Kan.1977). A tribunal is not impartial if it is biased with respect to the factual issues to be decided at the hearing. *Staton,* 552 F.2d at 914–15; *Bogart,* 432 F.Supp. at 904. The trial court concluded that the public hearing was unfair because the hearing officer "had a prejudiced mind when he went into this case." Rec., vol. XVIII, at 1756. The hearing officer's own testimony supports this finding. Rec., vol. XVII, at 1479–81.

■ Due process also requires that one be given notice of the charges against him a reasonable time before the hearing is to take place. *Staton,* 552 F.2d at 912. The court found that the hearing process was deficient because Miller had not been given adequate notice of the charges he would have to meet. The evidence is undisputed

that Miller first learned of many of the alleged grounds for dismissal when the mayor read them into the record at the beginning of the hearing. Thus the trial court did not err in concluding as a matter of law that the hearing did not provide Miller due process.

■ Moreover, except in emergency situations, due process requires that the hearing be held *before* termination becomes effective. *Board of Regents v. Roth,* 408 U.S. 564, 569–70, 570 n. 7, 92 S.Ct. 2701, 2705 n. 7, 33 L.Ed.2d 548 (1972); *see also Hatch v. Goerke,* 502 F.2d 1189, 1194–95 (10th Cir.1974). In ruling on post-trial motions, the trial court found that no "emergency existed which would justify a failure to afford plaintiff a pre-termination hearing." Rec., vol. II, at 302. Defendants do not contend on appeal that the trial court's conclusion on this issue is erroneous. Consequently, the January hearing did not satisfy due process in three particulars: it was not conducted by an impartial tribunal; it was not preceded by reasonable notice of the charges; and it was not held prior to Miller's termination.

■ Defendants' argument that the Rule of Necessity is applicable is without merit. Under this rule, even if a tribunal has an interest in the matter to be decided, which would ordinarily be grounds for disqualification, it may proceed if the matter cannot otherwise be heard. *United States v. Will,* 449 U.S. 200, 214, 101 S.Ct. 471, 480, 66 L.Ed.2d 392 (1980). Defendants have offered no reason why an unprejudiced hearing officer could not have been selected to preside over the hearing. Furthermore, defendants do not allege that the failure to give either adequate notice or a pre-termination hearing was unavoidable. The Rule of Necessity is simply irrelevant to the due process violations present in this case.

### III.

### LIBERTY INTEREST

In its answers to special interrogatories, the jury found that Mayor Warman and the City deprived Miller of his liberty without

due process of law. The jury further found that Mayor Warman had not "acted reasonably and in good faith in disseminating public statements about [Miller] in connection with his discharge as Assistant Police Chief." Rec., vol. II, at 299. Miller was awarded $20,000 as compensation (other than employment compensation) for the injuries he suffered as a result of damage to his reputation. The jury also awarded punitive damages of $7,500 in connection with the liberty interest deprivation.

Defendants contend that the evidence was insufficient to support the jury verdict on the issue of liberty interest deprivation. They argue that their motions for directed verdict and for judgment notwithstanding the verdict were therefore wrongly denied. In reviewing the denial of these motions, the evidence and the inferences from it must be viewed in "the light most favorable to the parties for whom the jury found." *Ford Motor Credit Co. v. Milburn,* 615 F.2d 892, 894 (10th Cir.1980). "[A] directed verdict or judgment n.o.v. may not be granted unless the evidence points but one way and is susceptible to no reasonable inferences which may sustain the position of the party against whom the motion is made." *Symons v. Mueller Co.,* 493 F.2d 972, 976 (10th Cir.1974). We have carefully reviewed the voluminous record in this case and conclude that it contains substantial evidence to support the jury's determination that Miller was unconstitutionally deprived of his liberty.[3]

■ " 'The concept of liberty recognizes two particular interests of a public employee: 1) the protection of his good name, reputation, honor and integrity, and 2) his freedom to take advantage of other employment opportunities.' " *Weathers v. West Yuma County School District R–J–1,* 530 F.2d 1335, 1338 (10th Cir.1976) (quoting *Lipp v. Board of Education,* 470 F.2d 802, 805 (7th Cir.1972)). *See also Board of Regents v. Roth,* 408 U.S. 564, 573–74, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972); *Abeyta v.*

*Town of Taos,* 499 F.2d 323, 327 (10th Cir. 1974). The manner in which a public employee is terminated may deprive him of either or both of these liberty interests. When the termination is accompanied by public dissemination of the reasons for dismissal, and those reasons would stigmatize the employee's reputation or foreclose future employment opportunities, due process requires that the employee be provided a hearing at which he may test the validity of the proffered grounds for dismissal. *McGhee v. Draper,* 639 F.2d 639, 643 (10th Cir.1981); *Staton,* 552 F.2d at 911. As discussed in Part II *supra,* the hearing in this case did not afford Miller due process.

■ The record contains ample evidence from which the jury could have concluded that the circumstances surrounding Miller's termination placed a stigma on him, and as a practical matter foreclosed other employment opportunities. The mayor's press release, issued October 17, 1975, stated that the decision to terminate Miller was based on findings that police department "morale was very low, the officers do not respect the Chief and Assistant Chief. The department has deteriorated to an extend [sic] that the men felt that they could not work effectively with the Chief and Assistant Chief." Rec., vol. III, at 390.

At the public city council meeting held on October 22, 1975, the mayor again announced Miller's termination. The meeting room was filled to overflowing and a public address system was set up to broadcast the discussion to the people in the foyer and outside the building who had been unable to get into the council chamber. The mayor stated that the reasons for the termination had been given to the newspapers, radio, and television, and were available at City Hall. At the January public hearing, reasons for Miller's dismissal beyond those detailed in October were publicly announced. Without relating the evidence, we note that the termination received extensive media coverage for several months.

**3.** The trial court properly instructed the jury on this issue. The jury was also instructed that Miller could not prevail unless he established

that "the defendants' acts and conduct were the direct cause of injury and consequent damages to the plaintiff." Rec., vol. II, at 279.

The record contains substantial evidence of Miller's failure to find employment in his chosen field of law enforcement, and of his inability to obtain any position comparable in salary or prestige to the one he lost. Given the nature of the reasons for Miller's termination, the jury could have reasonably inferred that the widespread public distribution of the allegations injured his standing in the community and severely impeded his ability to find other employment. Miller presented evidence of the resulting harm to his physical and mental well-being. "The jury ... has the *exclusive* function of appraising credibility, determining the weight to be given to the testimony, drawing inferences from facts established, resolving conflicts in the evidence, and reaching ultimate conclusions of fact." *Rasmussen Drilling, Inc. v. Kerr-McGee Nuclear Corp.,* 571 F.2d 1144, 1149 (10th Cir.1979) (emphasis in original), *cert. denied,* 439 U.S. 862, 99 S.Ct. 183, 58 L.Ed.2d 171 (1978). The issue of Miller's liberty interest deprivation was properly sent to the jury, and the record supports the jury's determination.[4]

## IV.

## LIABILITY OF THE COUNCIL MEMBERS

The jury determined that defendant council members were liable for the denial of due process in connection with Miller's property interest deprivation, and that they had not acted reasonably and in good faith in denying Miller a hearing prior to his termination. The jury awarded Miller $20,000 as compensation (other than employment compensation) for injuries suffered as a result of the denial of a hearing before termination. The jury also found that there was insufficient evidence to justify Miller's dismissal, and awarded him $150,000 as compensation (other than employment compensation) for the injuries resulting from his termination. In addition, the jury awarded Miller $20,000 in punitive damages for the property deprivation. Based on these findings, the court entered judgment against defendant council members in the total amount of $190,000.

On appeal, these defendants do not challenge the lower court's conclusion that Miller was deprived of a property interest. However, they argue that the evidence is insufficient as a matter of law to demonstrate that they were involved in the decision to terminate Miller or in the hearing procedure. We disagree.

The City is undeniably required by the Constitution to provide Miller with due process in connection with its termination of his property interest. To the extent that defendant council members argue that the city council, the governing body of the City, has no such duty, their position is untenable. Section 1983 creates an express federal remedy "to 'enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it.'" *Owen v. City of Independence,* 445 U.S. 622, 650–51, 100 S.Ct. 1398, 1415, 63 L.Ed.2d 673 (1980) (quoting *Monroe v. Pape,* 365 U.S. 167, 172, 81 S.Ct. 473, 476, 5 L.Ed.2d 492 (1961)). Local governing bodies are liable for constitutional deprivations when the improper action stems from a

---

**4.** As we have discussed above, a public employee has a liberty interest in the freedom to take advantage of other employment opportunities. In this case, the City deprived Miller of this liberty interest by denying him a pretermination hearing and publicly disseminating stigmatizing grounds for dismissal that the jury found to be unsubstantiated. Miller presented ample evidence at trial that these actions by the City, through its agent the mayor, permanently precluded him from finding comparable employment. Miller's loss in future earning ability due to this liberty interest deprivation is distinguishable from his property interest in the lost earnings resulting from the termination of his old position. *See, e.g., Board of Regents v. Roth,* 408 U.S. 564, 569–78, 92 S.Ct. 2701, 2705–10, 33 L.Ed.2d 548. Thus, the jury could have been instructed to consider this element of damages in its computation of liberty interest damages. However, the jury was told specifically not to consider employment compensation when computing the liberty interest award. No one objected, and this issue is therefore not before us.

"decision officially adopted and promulgated by that body's officers." *Monell v. New York City Department of Social Services,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978).

This court has held that a defendant city official is liable under section 1983 "when the defendant was in a position of responsibility, knew or should have known of the misconduct, and yet failed to act to prevent future harm." *McClelland v. Facteau,* 610 F.2d 693, 697 (10th Cir.1979). In this case the jury was instructed that:

> "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made. Moreover, personal participation is not the only predicate for section 1983 liability. Anyone who 'causes' any citizen to be subjected to a constitutional deprivation is also liable. The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows, or reasonably should know, would cause others to inflict the unconstitutional injury." [5]

Rec., vol. II, at 280.

However, individual officials are not personally liable for constitutional deprivations resulting from actions taken in their official capacity if their conduct was undertaken in good faith. *Wood v. Strickland,* 420 U.S. 308, 321–22, 95 S.Ct. 992, 1000–01, 43 L.Ed.2d 214 (1975). In this

regard the jury was instructed that "the defendants have the burden of proving not only that they believed in good faith their conduct was lawful, but also that their belief was reasonable under the circumstances." Rec., vol. II, at 282. This instruction accurately reflects the elements of qualified immunity set out in *Wood v. Strickland.*[6]

Credible evidence supports the jury's determination that the requisite causal connection existed between the actions of defendant council members and the denial of the constitutionally required due process hearing. The jury could have reasonably inferred from the trial record that defendant council members either directly participated in the termination process, or set in motion a series of events by others which they reasonably should have known would result in Miller's dismissal without a hearing. The record also supports the jury's finding that the actions of defendant council members were not undertaken in good faith.

Although evidence was presented that only the mayor had the authority to dismiss a city employee, Mayor Warman was apparently unaware of this fact at the time the terminations were discussed. He stated to the council at one of the private meetings "we ought to get the whole council together and let the council act as a body on whether [inaudible] so everybody knows what is going on. I can I guess discipline a department head but it's the council that can fire a person. I believe we operate as a team as you all know and I think thats how we gotta all work together on this [inaudi-

---

5. This instruction, based on *Johnson v. Duffy,* 588 F.2d 740, 743–44 (9th Cir.1978), was proposed by defendants.

6. The Supreme Court has recently reexamined the defense of qualified immunity. *Harlow v. Fitzgerald,* —— U.S. ——, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Under *Harlow,* the immunity of a government official is determined by the "objective reasonableness" of his conduct. *Id.* at 2739. Public officials "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known." *Id.* at 2738. Whether the law in question was clearly established when the conduct complained of occurred is a legal issue to be resolved by the court. *Id.* at 2739.

Application of this new standard would not affect the outcome of this case. The conduct of the individual defendants did violate constitutional principles which were clearly established at the time the events generating this lawsuit took place. *See, e.g., Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

ble]." [7]  Rec., vol. I, at 158. The mayor polled the council at one of these meetings to determine whether he still had their backing to fire Chief Pike.

The press release from the mayor on October 17 indicates that the decision to terminate Miller was made jointly by the mayor and the council and states that "[t]he Council and [the mayor] felt that a change had to be made." Rec., vol. III, at 390. At the public city council meeting of October 22, the mayor stated that all the council members supported his termination decision except one. Significantly, one of the council members not a party to this suit moved to reinstate Miller until a complete investigation could be made and a report given to the council. *Defendant council members voted against this motion and it failed.* Evidence was also presented that the termination decision was a political power play by the mayor and certain defendant council members from a particular area of the City.

█ In sum, ample evidence supports the jury's inference that the mayor would not have dismissed Miller without a hearing absent the support and encouragement of defendant council members. The jury further found that Miller's termination was not justified. Defendants do not challenge the trial court's post-trial ruling that had a pre-termination hearing been held, it is more likely than not that Miller would not have been discharged. As the governing body of the City, the council members had a duty to ensure that Miller was not terminated without a hearing. Since the record supports the jury's determination that defendant council members were responsible for the denial of a pre-termination hearing and did not act in good faith, they are liable for all damages resulting from this denial. The court properly awarded damages against these defendants for both the denial of a pre-termination hearing and the resulting termination.

**7.** A council member who is not a defendant in this suit surreptitiously tape recorded the meet-

V.

## AWARD OF EMPLOYMENT COMPENSATION

In an advisory capacity, the jury found that the amount of employment compensation Miller would have earned until retirement, less amounts he could actually expect to earn, was $70,895.00. The trial court awarded judgment in this amount against the City as "an equitable remedy in lieu of reinstatement, based on the jury's findings of liability and the finding that substantial evidence to justify the termination of plaintiff did not exist as of October 15, 1975." Rec., vol. II, at 303. On appeal, the City contends that at most Miller was only entitled to receive employment compensation until May 1976, when his yearly term of employment was due to expire.

The trial judge held as a matter of law that Miller was deprived of a property interest when he was discharged. Miller now argues that the property interest extended beyond the one-year term of appointment provided by ordinance because past practice had been for the City to renew his contract routinely each May. He cites *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), which held that allegations of rules and understandings justifying a claim of entitlement to continued employment were sufficient to withstand the defendant's motion for summary judgment. *Perry* was remanded to give plaintiff opportunity to present proof of such property interest. However, all that Miller argued in his motion for partial summary judgment was that he had a contract for one year. Hence, all that the trial judge had before him was that discharging Miller mid-term had deprived him of a property right.

█ While Miller might have been able to prove that he had a property interest extending beyond the one-year term, he made no effort to do so below, and the jury was not instructed on the issue. We cannot hold as a matter of law that Miller's proper-

ings.

ty interest in his employment with the City extended beyond his term of appointment. *See Wertz v. Southern Cloud Unified School District # 334,* 218 Kan. 25, 542 P.2d 339, 346 (1976); *see also City of Roeland Park v. Cross,* 229 Kan. 269, 623 P.2d 1332 (1981); *Riggs v. City of Beloit,* 199 Kan. 425, 429 P.2d 821, 824 (1967). Accordingly, the award of $70,895.00 must be reversed. We remand for a determination of the damages due Miller for the period between his discharge and the expiration of his term.

## VI.

## PUNITIVE DAMAGES

The jury awarded $20,000 in punitive damages against all defendants for Miller's property interest deprivation, and $7,500 in punitive damages against the City and Warman for the liberty interest deprivation. On appeal, defendants argue that the trial court erred in allowing the jury to assess punitive damages in this case.

### A. The Individual Defendants

The jury was instructed that it could assess punitive damages against those defendants whose conduct toward Miller was malicious, wanton, or oppressive. Defendants do not challenge the form of the punitive damages instruction on appeal.[8] However, they contend that punitive damages were simply not warranted by the facts of this case.

Punitive damages may be awarded under section 1983 in appropriate circumstances to deter or punish violations of constitutional rights. *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 267–68, 101 S.Ct. 2748, 2760, 69 L.Ed.2d 616 (1981); *Silver v. Cormier,* 529 F.2d 161, 163 (10th Cir.1976).

"The allowance of such damages inherently involves an evaluation of the nature of the conduct in question, the wisdom of some form of pecuniary punishment, and the advisability of a deterrent. Therefore, the infliction of such damages, and the amount thereof when inflicted, are of necessity within the discretion of the trier of fact."

*Busche v. Burkee,* 649 F.2d 509, 520 (7th Cir.) (quoting *Lee v. Southern Home Sites Corp.,* 429 F.2d 290, 294 (5th Cir.1970)), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981). The evidence is sufficient to sustain the jury's finding that the unconstitutional acts of Mayor Warman and defendant council members were done maliciously, wantonly, or oppressively.

Defendants also argue that the assessment of punitive damages in this case is improper because the award lacks a deterrent effect. We disagree. Even though defendants are no longer public officials themselves, the award of punitive damages against them will deter others in such positions of public authority from future disregard of the constitutional rights of public employees. *Busche,* 649 F.2d at 520.

### B. The City

In *City of Newport,* decided after the trial of this case, the Supreme Court concluded that "a municipality is immune from punitive damages under 42 U.S.C. § 1983." 453 U.S. at 271, 101 S.Ct. at 2762. Defendants urge us to apply the holding in *City of Newport* on appeal and reverse the award of punitive damages against the City. On the other hand, Miller contends that retroactive application of the holding is not appropriate.

When a change in the law takes place while a case is on direct review, "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice." *Bradley v. Richmond School Board,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). We conclude that retroactive application will not result in hardship or injustice to Miller. "Punitive damages by definition are not intended to compensate the injured party, but rather to punish the tortfeasor whose wrongful action was inten-

---

8. We have recently approved the use of such an instruction in a suit under 42 U.S.C. § 1983.

*Garrick v. City of Denver,* 652 F.2d 969, 971 (10th Cir.1981).

tional or malicious, and to deter him and others from similar extreme conduct." *City of Newport,* 453 U.S. at 266–67, 101 S.Ct. at 2759–60. Moreover, Miller concedes that retroactive application will not affect his recovery of punitive damages in this case due to the joint liability of the City and individual defendants. In addition, the public policy considerations against municipal liability for punitive damages, which the Supreme Court found compelling in *City of Newport,* 453 U.S. at 266–71, 101 S.Ct. at 2759–62, are equally applicable here.

This court has recently applied the holding in *City of Newport* under similar circumstances to reverse an award of punitive damages against a municipality. *Ray v. City of Edmond,* 662 F.2d 679, 680 (10th Cir.1981). Consequently, we reverse the punitive damages award against the City.

## VII.

### EVIDENTIARY ISSUES

■ Defendants argue that irrelevant evidence relating to the termination of Police Chief Pike was improperly admitted at trial. "The determination of whether the evidence is relevant is a matter within the sound discretion of the trial court, and we will not disturb that decision on appeal absent a showing of a clear abuse of discretion." *Texas Eastern Transmission v. Marine Office-Appleton & Cox Corp.,* 579 F.2d 561, 566 (10th Cir.1978). We find no abuse here.

The judgment is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.